WOODS *v.* PALMER.

1. BROKERS—REAL ESTATE—COMMISSIONS — ACTION — EVIDENCE — SUFFICIENCY.

In an action to recover commissions on a sale of timbered lands, evidence examined, and *held*, to support no other inference than that plaintiff was acting either in the interest of the purchaser or his own interest; that he suppressed one offer made by the purchaser that defendants were entitled to know; that he did not act in good faith with defendants, and that the idea of a commission was an afterthought.

2. SAME—INSTRUCTIONS—SUPPORT FROM EVIDENCE.

An instruction that the jury might find a verdict for plaintiff if they should find that he was a mere middleman, who brought the parties together and permitted them to make their own bargain, is erroneous where, under the evidence, plaintiff conducted the entire negotiations and communicated the offer to defendants that was accepted.

8. SAME—NEW TRIAL—VERDICT AGAINST EVIDENCE.

*Held*, that a verdict for plaintiff was so clearly against the weight of the evidence that the court below should have granted the motion for a new trial.

Error to Saginaw; Gage (W. G.), J. Submitted October 23, 1907. (Docket No. 118.) Decided March 5, 1908.

Assumpsit by Charles Woods against Lizzie M. Palmer, Thomas W. Palmer, and Joseph A. Whittier, individually and as administrator of the estate of Joseph B. Whittier, deceased, for commissions on the sale of certain timber. There was judgment for plaintiff, and defendants bring error. Reversed.

*Beach, O'Keefe & Rockwith,* for appellants.

*De Vere Hall,* for appellee.

GRANT, C. J. The plaintiff's action was brought to recover a commission on a sale of timber land alleged to have been made by him for defendants, who owned it under the firm name of C. Merrill & Company. There is no evidence of any express contract to act as defendants' agent, or broker or middleman in the sale of the lands. Plaintiff first heard that these lands were for sale in the winter of 1902 and 1903, through one Lucas, whose lands, in the same vicinity, he was trying to buy. Plaintiff then went to see one Bowman who was looking after defendants' lands to prevent trespass, etc. He testified that he then went to see defendant Joseph A. Whittier, and asked his price for the lands, and was informed "it was $55,000;" that he told Whittier it was too high; that he could not sell it at that price.

Plaintiff did not see defendant Palmer until the sale was consummated. Whatever time plaintiff spent in the examination of these lands is wholly immaterial, for he introduced no evidence tending to show that defendants knew that he was making examinations, much less that he was making them in their behalf. As soon as plaintiff learned the timber was for sale he informed Mr. Bradley, in whose employ he then was, and who finally purchased.

Plaintiff testified that he went up and looked over the timber four or five different times, and every time he came back saw Mr. Bradley, and told him what kind of timber it was.

On March 9th, plaintiff wrote Whittier the following letter:

"I have got to go over to Canada to be gone two or three weeks for Eddy Bros., and will you please not let any outsiders know about price we talked on land and if you will please wait until I get back before you close a deal with any other party."

To which Whittier replied:

"Yours of the 9th inst. was duly received. We have seen Mr. Bowman since you were here and from his report we think that our offer on the timber was low. We do not wish to tie the timber up as there are other parties who wish to look it, but as we desire to make the sale to you if possible, we will consent to give you an option at the price and conditions we named until April 1st, which will give you time to do your Canada work."

Plaintiff testified that he meanwhile had told Mr. Whittier that if he did not sell to Bradley he thought he might sell to other parties. On March 26th, in reply to a letter from plaintiff to him, Mr. Whittier extended the option until Saturday, April 4th. Plaintiff, besides being in the employ of Bradley at the time, obtained a contract to do the lumbering, and soon after the contract of sale was made took possession of the property for Mr. Bradley.

Plaintiff admits that he kept telling Mr. Bradley that he would get it cheaper for him if he could; that he told Mr. Bradley that $45,000 was a big price, and he might get it for $40,000. Bradley then offered $42,000, but this offer was never communicated to defendants, and plaintiff was still then trying to get it for $40,000. Bradley finally communicated direct to plaintiff his acceptance of the offer of $45,000. Bradley then notified

plaintiff to be present when the parties met to execute the papers. Ten thousand dollars was paid in cash, the balance on time. Plaintiff knew this. He made no request for payment. He said not a word about any commission until, according to his testimony, Mr. Palmer asked him what he was getting out of the trade, and "I told him I wouldn't get nothing except to get a commission out of him." For almost three years plaintiff kept silent, and only after he had done the lumbering for Bradley and made a loss, did he claim any commission of either of the defendants. In a letter of February 18, 1906, written by plaintiff to Mr. Palmer, in which he is trying to persuade Mr. Palmer to pay him a commission, he wrote:

"Mr. Bradley said we will buy it if it is as you represent it, and if you will take the job of lumbering the same, and for me to help to buy the timber as cheap as they or I could, which I did try to do, but I told Mr. Bradley that I did not care to do the lumbering for it was very expensive stuff to pick up for a man to take it by the job, but at last I told Mr. Bradley to buy it, and I would take the chances to do the logging, which I did."

February 15, 1906, plaintiff wrote defendant Palmer:

"I do feel as if you ought to give me a commission for selling that timber for you, known as C. Merrill land in Gladwin county to Mr. Bradley. * * * I have lost money picking up scattering saw-log timber * * * and I do think I am entitled to a fair commission."

There is no assertion in any of these letters that plaintiff had a contract to sell these lands upon a commission. They were only an appeal to Mr. Palmer to give him a fair commission because Bradley had lost, plaintiff had lost, and defendants had made a good sale.

Plaintiff negotiated the purchase of other lands from the defendants subsequently, and asked for extensions of time for payment, offering to pay six per cent. interest, but said nothing about the commission which he now claims. He explains his delay by saying that he supposed he was

not entitled to his commission until Bradley had paid the entire purchase price—an excuse too lame to be entitled to any consideration.

The only written documents prior to the consummation of the sale are the letters above given. There is nothing in them to indicate that plaintiff was acting in the sale of these lands as a broker or agent of the defendants, but, on the contrary, in the character of a purchaser. The conversation with Mr. Palmer after the sale was accomplished is no recognition or ratification of a contract. According to plaintiff's own testimony it was a casual conversation, and was the first time that he had ever mentioned a commission to either of the defendants. It neither affirmed an existing contract nor created a new one. Palmer knew of no contract, and there could be no ratification without knowledge. From this record, I think no other inference can legitimately be drawn than that the plaintiff was acting either in the interest of Mr. Bradley or in his own interest; that he suppressed one offer made by Mr. Bradley which defendants were entitled to know; that he did not act in good faith with the defendants, and that the idea of a commission was an afterthought. It is just to the defendants to say that they deny all the material conversations to which plaintiff testified.

2. The court instructed the jury that they might find a verdict for plaintiff if they should find that he was a mere middleman, who brought the two parties together and permitted them to make their own bargain. The vice of this instruction lies in the fact that there was no evidence on which to base it. Plaintiff did not merely bring defendants and Bradley together and leave them to make their own negotiations. He conducted the entire negotiations, and finally, when he had secured from defendants the offer of $45,000, he communicated it to Mr. Bradley and he (Bradley) accepted it by so notifying plaintiff on the last day that his option expired.

3. If, however, there was any conflict of testimony, I think the verdict is so clearly against the weight of the evidence that a new trial should be ordered, which the court below refused.

The judgment is reversed, and new trial ordered.

Blair, Montgomery, and Ostrander, JJ., concurred. Hooker, J., concurred in the result upon the third ground stated.