### KIRBY-SORGE-FELSKE CO. *v.* DOTY.

AGENCY—BROKERS—FIDUCIARY RELATIONS.

> An agent to sell may not become the agent of the purchaser, nor may an agent to buy become the agent of the seller, unless both the principals are fully and fairly acquainted with the fact that the agent was acting in a dual capacity; but if both, knowing the circumstances, consent that the agent may so act, the agreement for commissions is valid and enforceable.

Error to Wayne; Codd, J. Submitted January 6, 1916. (Docket No. 32.) Decided March 30, 1916.

Assumpsit by the Kirby-Sorge-Felske Company, a corporation, against Payson M. Doty for broker's commissions. Judgment for plaintiff. Defendant brings error. Affirmed.

*Charles E. Ward,* for appellant.

*Monaghan & Monaghan,* for appellee.

MOORE, J. The plaintiff is a corporation engaged in the real estate business. The defendant is a resident of Grand Rapids. He owned property on Bagley avenue, in Detroit, that brought him an income of about $2,000 a year. He desired to lease the property for 99 years, and to receive a larger rental than he was then receiving, hoping to receive $4,000 a year. He talked with several real estate firms in relation to it, finally having a talk with Mr. Sorge and Mr. Kirby of the plaintiff corporation in April, 1912, when it was agreed that, if the plaintiff found him a lessee, it should receive a commission of $1,000. Mr. Sorge at once became active, and, after talking with Mr. Walter F. Haas and getting him interested, took Mr. Doty to Mr. Haas about the middle of April, and from that time on it is claimed most of the negotiations were conducted by Mr. Doty and Mr. Haas. Prior to May 1st these two men had agreed verbally on the terms of a lease. On the 2d of May the following writing was executed:

"Mr. Payson M. Doty: We propose to lease from you property in the city of Detroit, Michigan, described as lot number twenty-six in block ten of the Governor and Judges plan, being house Nos. 25, 27 and 29 Bagley avenue, for the term of ninety-nine (99) years from May 1, 1912, upon the following rentals to be net: Thirty-five hundred dollars per year for fifteen years, and four thousand dollars per year there-

after, payable quarterly in advance—the formal lease
when drawn to contain provisions.   *   *   *

"It is understood that we will be privileged to join
with us in the permanent lease either Mr. Julius H.
Haas or Mr. Charles F. Clippert.  Form of lease to be
drawn and executed and first quarter's payment of rent
made within ten days after an abstract showing good
and sufficient unincumbered title to said premises has
been furnished us.  Rents to be adjusted as of May
1, 1912.

"Dated Detroit, Michigan, May 2, 1912.

"PAUL A. SORGE.

"U. GRANT RACE.

"WALTER F. HAAS.

"I hereby accept the foregoing proposition. Dated
May 2, 1912.                    PAYSON M. DOTY."

It is the claim of the plaintiff that after the rental
was agreed upon Mr. Sorge was invited to become a
member of the syndicate.  The parties are not agreed
as to who first made the suggestion.  Mr. Haas' recol-
lection is that he first made the suggestion and talked
with Mr. Doty about it, who expressed himself as glad.
We quote from Mr. Haas:

"(Continuing).  There was no arrangement for Mr.
Sorge to come in until Mr. Doty was present and con-
sulted.  Mr. Doty and myself concluded the negotia-
tions with reference to price.  Mr. Sorge had nothing
to do with the reduction of the amount from $4,000
to $3,500.  Mr. Doty looked after those things, the
price and the terms himself.

"Q. Was your argument on that subject had with
Mr. Sorge or Mr. Doty.

"A. With Mr. Doty himself.

"(Continuing).  When, in the presence of Doty, I
broached the subject of Sorge coming into the deal, I
asked Mr. Doty whether he would have any objections
if Mr. Sorge was one of the lessees, and told him I
wanted Mr. Sorge as one of the lessees if I went in,
because I wanted him to back up his judgment by his
actions by coming in and taking chances, too.  Mr.
Doty said— I said, 'Will there be any change in this
matter if he comes in?' and Mr. Doty said, 'No.'  He

said, 'I am satisfied to have him in; Mr. Sorge is a live one, and I should like to have him as one of the parties to the lease.'

"Q. Who was it, Mr. Haas, that influenced you as a purchaser of that property?

"A. Mr. Sorge.

"Q. Who was it that brought you as a purchaser to Mr. Doty?

"A. Mr. Sorge.

"(Continuing). I never knew Mr. Doty before that time. After the conversation in which Mr. Doty expressed his desire to have Mr. Sorge come in the proposition was reduced to writing."

Mr. Doty's recollection is that he first broached the subject of Mr. Sorge's becoming one of the lessees. He testified about being taken to the office of Race and Haas by Mr. Sorge and conversations there had. We quote:

"We talked over the matter, but did not come to any definite agreement at that time. I came away and I told Sorge that I felt friendly towards him and I had known him some time, and that, as there was a $100,000 margin in that lease, I should like to have him come in with the other four—I would like to have him join with the others as a lessee."

It is clear from the testimony of all who have knowledge of the subject that the fact that Mr. Sorge was to be one of the lessees was well understood by Mr. Doty and approved of by him before any written instruments were signed. It is the claim of the plaintiff that in becoming a member of the syndicate Mr. Sorge was acting for himself, and not for the plaintiff, and that it was agreed that his joining the syndicate should not affect the agreement about the $1,000 commission. On the other hand, Mr. Doty claims Mr. Sorge was acting for the plaintiff's benefit in joining the syndicate, and that it was agreed that as the rental for the first 15 years was to be $3,500 instead of $4,000 a year, and would inure to the benefit of Mr. Sorge and the

plaintiff corporation that the commission was to be waived.

After the writing of May 2 was executed the parties proceeded with the abstract of title and the preparation of a formal lease. Some difficulties occurred as to the details, and interviews and correspondence were had in the effort to adjust them. July 5, 1912, Mr. Haas wrote to Mr. Doty at Grand Rapids in part as follows:

"We are inclosing herewith copy of letter this day sent by us to the Michigan Trust Co., of your city, which should explain the method we have adopted for closing this matter up. From your letter and from that of your attorney, Mr. Ward, and also from conversation which we have had with him over the telephone, it seems to us that you are attempting to use us to draw your chestnuts out of the fire. You know that we have nothing to do with the matter of commissions claimed by the Kirby-Sorge-Felske Co. We have gone to great pains and some expense to have this lease drawn as you desired the same to be drawn and made many changes at your request. You have often expressed yourself as being pleased with the manner in which we have handled this matter, and we think it decidedly unfair for you to try to use us to adjust a claim between yourself and real estate agents. We have, therefore, taken this method to have the matter closed and determined once and for all. The terms of this lease have now all been agreed upon, and there is no necessity for further negotiation or delay."

This letter and the copy of the one to the Michigan Trust Company was handed by Mr. Doty to his attorney, who on the 6th of July wrote Mr. Haas in part as follows:

"*Dear Sir:*  Mr. Doty has turned over to me your letter of the 5th. I have examined the leases you sent to the Michigan Trust Company, and they are satisfactory, and Mr. Doty and his wife will sign them on Monday.  *  *  *

"On the adjustment of these matters the lease will

be delivered, and the matter of claimed commission need not interfere with the execution of the lease.

"Yours truly,

"CHARLES E. WARD."

The matters referred to in the letter were adjusted, and the lease duly executed. The plaintiff and Mr. Doty not reaching an agreement, this suit was brought. We have already stated the claims of the respective parties. The testimony was in sharp conflict. That offered by each side tended to establish its claim.

Requests preferred by defendant as follows were refused:

"*Ninth.* The contract for commission first made in this case was as matter of law abandoned. Plaintiff, if it recovers at all, must do so upon a new contract. In order that there should be such new contract the minds of the parties must have met. Mr. Doty must at least have heard and understood what plaintiff now claims was said to him at the time it claims a new contract was made, and must have understood at the time that it related to his payment of a commission, notwithstanding the reduction of rents and notwithstanding the fact that Mr. Sorge had then become interested personally so that his interest would be opposed to that of Mr. Doty. The burden of proof is upon the plaintiff to show that the minds of the parties did so meet, and that Mr. Doty did so hear and understand, and that, so hearing and understanding, he agreed to such new contract; and, unless you find from the evidence these facts, the plaintiff is not entitled to recover anything in this case and your verdict must be no cause of action.

"*Tenth.* You should not find in this case that a new contract was made after Mr. Sorge began to negotiate to become a lessee, unless you find the proof to be clear and satisfactory to your mind that Mr. Doty had knowledge and understanding of the new contract plaintiff now claims was made, or at least the words which plaintiff now claims constituted such new contract, and that he intended them to assent to it, understanding that it was an agreement to pay commission notwithstanding the new conditions that had then arisen."

The judge, after stating the claims of the parties, charged the jury in part as follows:

"While it is held that a person cannot act as agent of both parties, and that in representing a party he must give his best efforts to that party, at the same time I believe that the great weight of authority holds it to be the law that, when a person has acted openly and fairly, his right to recover a commission is not affected by the fact that he was one of the intending purchasers or became one of the purchasers; but the plaintiff in this case cannot recover if Mr. Sorge was an officer and agent of the plaintiff company, and if, during negotiations up to the 2d day of May, Sorge acted adversely to the interests of the defendant. And that is the question for you to determine. The fact that he went into this syndicate was, of course, manifestly known to the defendant, so that point is eliminated from your consideration. That is conceded by the documents that have been offered. Whether he acted adversely to the interests of his client before the 2d day of May—whether or not Mr. Sorge, who was the agent and acting for the plaintiff, acted adversely to the interest of the defendant, is for you to determiné. If he did so, the plaintiff company is bound by his act, and cannot recover for the commission. From the time that Mr. Sorge went into this company there' is a dispute as regards the liability of the defendant for the commission after that time. It is the contention of the defendant in this case at that time when Sorge went into this concern that in consideration of his (defendant's) acceptance of Sorge as a member of the syndicate, and also in consideration of the reduction of the amount of the lease from $4,000 a year to $3,500 a year, there was a waiver on the part of Sorge, representing the plaintiff company, of the commission in the transaction. This is denied on the part of the plaintiff and his witnesses, and that is a question of fact for you to determine. Because, in view of the fact that Mr. Sorge had these negotiations in behalf of the plaintiff company, he had as much right in my judgment to abrogate the agreement for the commission as he had to enter into it in the first instance, and if at the time, on the 2d day of May, when this contract

was signed, Mr. Sorge did agree to a waiver of the commission, manifestly the plaintiff cannot recover. If, on the contrary, this agreement was not entered into, as claimed by the plaintiff, to abrogate or set aside the agreement for a commission, the fact that Mr. Sorge entered into this syndicate, if he acted fair and openly, would not affect, in my judgment, the plaintiff's right to recover in this case, as a matter of law.

"Now, gentlemen of the jury, those are the two questions for you to determine. It is my judgment that the agreement of May 2d was an enforceable agreement. If you find from the testimony that the plaintiff's theory is correct, and that an agreement was entered into for a commission on obtaining a satisfactory tenant, the fact of entering into the agreement, in my judgment, would estop the party from denying that it was a satisfactory agreement, and, if you find that there was no agreement to abrogate this commission, then the plaintiff is entitled to recover in this action. If you believe the defendant's theory of this case, either that the agreement was for the payment of a commission on a lease at the rate of $4,000 a year or that thereafter, on the 2d day of May, or prior thereto, at the time Mr. Sorge came in, that they agreed to waive the commission, then manifestly the plaintiff cannot recover.

"I will charge you, gentlemen of the jury, that any negotiations or any testimony with regard to negotiations after the terms of the lease had been entered into, after the 2d day of May, when Sorge, with knowledge of the defendant, became one of the syndicate, any claim on the part of or any action on his part thereafter would not have any effect upon the claim for commission, because, if this commission was earned, in my judgment, gentlemen of the jury, it was earned by reason of the entering into the agreement of the 2d day of May, and that is the time the commission was earned, if it was earned at all."

The jury returned a verdict for $1,050 in favor of the plaintiff, upon which a judgment was entered. The case is brought here by writ of error. It is claimed the plaintiff was not a mere middleman, and that, both

before and after the paper of May 2d was executed, he actively negotiated in his own interest, both individually and through his associate, Haas. We quote from the brief:

"Many reasons are found in the opinions of courts and text-writers which are inconsistent with the right of an agent or broker to negotiate in his own interest and adversely to the interest of his principal in the bringing about of the very sale under which he expects to be paid a commission. It seems certain, however, that under the authorities it is at least necessary in such a case that the principal be fully informed by the agent of every fact and circumstance within his knowledge which the principal is entitled to know, and that the principal with full knowledge of all the facts contract in the light of the changed conditions, to pay the commission, notwithstanding the change. Nothing short of this is consistent with law or morals."

And many cases are cited in support of these contentions.

The law of the case is no longer open to question in this State. In *Leathers* v. *Canfield,* 117 Mich. 277 (75 N. W. 612, 45 L. R. A. 33), Justice LONG, speaking for the court, said:

"The general rule of agency is that an agent to buy or sell is bound to make the best bargain he can for his principal, and, if he takes any compensation from the other party, it becomes at once the property of his principal; the law not permitting the agent to allege that it was received otherwise than as agent. And generally no agent, in the course of his agency—in the matter of his agency—can be allowed to make any profit without the knowledge and consent of his principal. It is said in *Rice* v. *Davis,* 136 Pa. 442 [20 Atl. 513], 20 Am. St. Rep. 931, that:

" 'The principle underlying this case that an agent for the sale of property cannot at the same time act as agent for the purchase thereof, or interest himself therein, and thus entitle himself to compensation from both vendor and vendee, is grounded on the infallible declaration that "no man can serve two masters." ' "

190 Mich.—36.

To the same effect is *Woods* v. *Palmer,* 151 Mich. 30 (115 N. W. 242).

In *Friar* v. *Smith,* 120 Mich. 411 (79 N. W. 633, 46 L. R. A. 229), Justice MONTGOMERY, speaking for the court, said:

"The rules of law applicable to this class of cases are briefly stated:

"(1) An agent to sell may not become the agent of the purchaser, nor may an agent to buy become the agent of the seller, unless the principals are duly acquainted with the fact that the agent is acting in such dual capacity. Mechem, Ag. § 943; *Scribner* v. *Collar,* 40 Mich. 375 (29 Am. St. Rep. 541); *Leathers* v. *Canfield,* 117 Mich. 277 [75 N. W. 612, 45 L. R. A. 33].

"(2) If, however, both principals, with full knowledge, consent that the agent act on behalf of both, the agreement for compensation is binding. See cases cited above."

The applicable law has been the subject of discussion in the recent case of *Hutton* v. *Sherrard,* 183 Mich. 356 (150 N. W. 135, L. R. A. 1915E, 976).

While we have not thought it necessary to discuss all of the contentions of counsel for appellant we have examined them with care. In the instant case the pivotal question was not a law question, but was one of fact. Mr. Doty by his own testimony knew before he signed any memorandum for a lease and approved of Mr. Sorge becoming one of the lessees. He claims that, by reason of his consenting thereto and because of a reduction in the rent, the commission was to be waived. The plaintiff claims this is not true; that the agreement was the commission should be paid, though Mr. Sorge became a member of the syndicate. There was testimony tending to establish each of these claims.

Judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.