## DICKINSON *v.* HANLEY.

1. BROKERS — REAL ESTATE SALE — COMMISSIONS — CONTRACTS — EVIDENCE.

A real estate broker, who secured a purchaser for a parcel of realty which the several owners did not employ plaintiff to sell, was not entitled to maintain an action for his commissions against one of them who represented, as he claimed, that she had absolute power to dispose of the land, and the court did not commit error in directing a verdict against the agent for the reason assigned that he was a mere volunteer and there was no competent proof of misrepresentation, which, in part, rested upon hearsay.[1]

[1]On what constitutes employment of broker which will entitle him to commissions otherwise earned, see note in 27 L. R. A. (N. S.) 786.

2. SAME—FRAUD—EVIDENCE.
    Evidence *held*, to be insufficient to support a charge of fraud.

Error to Wayne; Hally, J. Submitted June 16, 1916.
(Docket No. 141.)    Decided December 21, 1916.

Case by Stanley R. Dickinson against Elizabeth W.
Hanley and others for broker's commissions and for
fraudulent misrepresentations. Judgment for defend-
ants on a directed verdict. Plaintiff brings error. Af-
firmed.

*Dickinson & Dickinson (Benj. S. Pagel,* of counsel),
for appellant.

   *A. B. Hall,* for appellees.

PERSON, J. It appears from the record that plain-
tiff is a real estate broker in the city of Detroit. His
method of doing business, according to his own de-
scription of it, is as follows:

'I go to the records in the city hall and get the
names of the owners, or I go right to a certain piece
of property, and ask who the owner is; then, if the
owner lives there, I call on him."

If the property is for sale, plaintiff says he picks
up such information about it as he can, and starts
out to find a purchaser. It is to be inferred from his
testimony that he usually arranges with the latter
for his compensation. In stating the origin of the
present action, plaintiff says:

"In February, 1914, during one of these listing can-
vasses, I called at 63 Watson street."

No. 63 Watson street is the property in question in
this case. He there met Mrs. Campau, one of the
defendants, and learned from her that the property
belonged to Mrs. Hanley, and that it was for sale.
Mrs. Campau also informed him that the price asked

was $22,000. He then departed in search of some one who might be induced to make the purchase. After calling upon several gentlemen without avail, he was finally able to interest a Mr. Alvin G. Sherman and the latter's father and brother in the matter. These gentlemen, however, seem not to have been willing to pay $22,000 for the property. Plaintiff, therefore, again visited No. 63 Watson street, and was able this time to see Mrs. Hanley herself. Her daughters, Mrs. Campau, hereinbefore mentioned, and Mrs. Kern, the other defendants, were also present. He says that at this time Mrs. Hanley told him the property was owned by four heirs, but that they had given her absolute power to sell it.

Plaintiff also testifies that he had hoped to be able to get the property for $16,000, but found he could not. He did, however, succeed in getting Mrs. Hanley to sign a written contract, running to "Alvin G. Sherman *et al.*," by which she agreed to make a conveyance for $19,000. Of this amount $500 was to be paid immediately, and the balance at a later period. Having secured Mrs. Hanley's signature to the contract, he returned to the Shermans, who also signed it. At the time the contract was being executed by Mrs. Hanley, he asked Mrs. Campau and Mrs. Kern to sign it as witnesses. This they did, but in signing it he had them place their names below that of Mrs. Hanley, as if they were parties. Upon plaintiff's return to the Shermans with the contract, they executed an agreement in writing to pay him a commission of $570 for securing the sale. The agreement states that such payment is understood to be his profit on the agreement to buy and sell secured by him from Mrs. Hanley.

Upon the tender of a check, a little later, to Mrs. Hanley, as payment of the $500, she repudiated the entire transaction, and refused to proceed farther with the sale. A bill was filed by the Shermans for spe-

cific performance, but for some reason, not clearly explained in the record, the suit was discontinued. Plaintiff then brought this action against Mrs. Hanley and her daughters for the loss of the commission he was to have received from the Shermans.

His claim, if we rightly understand it, is based upon two theories:

*First*, that the defendants, by refusing to perform the contract, became indebted to him for services in procuring a purchaser; and, *second*, that defendants misrepresented the authority of Mrs. Hanley to make the sale.

At the close of plaintiff's proofs, the trial court directed a verdict against him; and in this the trial court was undoubtedly right. Plaintiff utterly failed to show any contract relations whatever between himself and the defendants, or either of them. He does not testify that they ever asked or in any way employed him to dispose of the property. So far as they are concerned, he was a mere volunteer, hoping to get a commission out of the purchaser. That being true, a misrepresentation as to Mrs. Hanley's authority to make the sale, even if there were such a misrepresentation, could not be made the basis of an action in his behalf. But there is no competent proof showing that there was a misrepresentation. Plaintiff was told, so he says, after the deal fell through, that a party, other than the defendants, would have to be consulted before a sale could be effected. But he fails to furnish any evidence of the fact other than his own hearsay information.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.