## SCHNEIDER *v.* C. H. LITTLE CO.

1. APPEAL AND ERROR—TRIAL—INSTRUCTIONS—REVIEW.
   Exceptions to the charge on a theory of defense which might well have been disregarded by the trial court for lack of proof, will not be reviewed by the appellate court.

2. TRIAL—RETRIAL—EVIDENCE—QUESTION FOR JURY—RES JUDICATA.
   Where, on a former appeal, the appellate court held that a verdict for defendant had been improperly directed (184 Mich. 315), and, upon a retrial, the case in no essential feature differs from the former one, although defendant advanced a theory of independent, intervening, effective cause, which failed for lack of proof, the court below was not in error in submitting the issues to the jury, under proper instructions.

3. APPEAL AND ERROR — TRIAL — INSTRUCTIONS — REQUESTS TO CHARGE.

Where the instruction of the court on the defendant's theory of the case was correct so far as it went, the failure of the court to give more specific instructions was not reversible error in the absence of a request therefor.

4. SAME—TRIAL—INSTRUCTIONS.

The charge of the court should be taken as a whole; error cannot be predicated upon isolated portions.

5. EVIDENCE—CONCLUSIONS—EXPERT TESTIMONY.

Conclusions of a witness, even an expert, as to what an ordinarily prudent man would have seen are inadmissible.

6. SAME—FACT—CONCLUSIONS—CONTRIBUTORY NEGLIGENCE.

In an action for personal injuries received by plaintiff by reason of the giving way of a floor on which defendant's agent had negligently piled a great quantity of plaster, testimony of plaintiff that the presence of the plaster on the floor did not cause him any thought of danger was admissible, it being a fact, and not a conclusion, bearing upon the contributory negligence of plaintiff, since, if there was danger which he fully appreciated, he might have been guilty of contributory negligence.

7. TRIAL—MISCARRIAGE OF JUSTICE.

Where there is no reversible error, and, upon the entire record, it cannot be said that the trial resulted in a miscarriage of justice, the judgment of the court below will be affirmed.

Error to Wayne; Gage, J., presiding. Submitted January 22, 1918. (Docket No. 164.) Decided March 27, 1918.

Case by Charles W. Schneider against the C. H. Little Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Stevenson, Carpenter, Butzel & Backus* (*Thomas G. Long* and *Rockwell T. Gust,* of counsel), for appellant.

*Monaghan, Monaghan, O'Brien & Crowley,* for appellee.

Stone, J. This case has already been before this court and is reported in 184 Mich. 315. On the former trial a verdict was directed for the defendant at the close of plaintiff's case. For the facts before this court upon the former appeal, reference is made to the very full statement contained in that opinion.

On the second trial the defendant introduced testimony regarding the custom prevailing in the city of Detroit among contractors and materialmen, as to the delivery of construction material. Otto Misch, a witness for plaintiff, testified, on cross-examination, as follows:

"*Q.* As I understand you to say, it is customary to put it where the buyer wants it?

"*A.* Yes.

"*Q.* My question is, after the material is placed in the building, if the buyer does not have complete charge of it?

"*A.* He has, yes."

Regarding the relative rights of the architect and contractor, he testified:

"*Q.* In the ordinary course of business a man to whom the material was delivered, or his agent, tells the teamster or driver where to put it, is that right?

"*A.* Yes.

"*Q.* And he customarily directs him to put it in the most convenient place, that is a matter which he decides for himself?

"*A.* Yes.

"*Q.* I mean that is a matter which the buyer decides, is that right?

"*A.* Absolutely, the most convenient for the contractor."

Mr. Wetzel, the architect on the building where the injury was sustained, and a witness for the plaintiff, testified:

"As far as I remember, this was the only time on this job that I told the teamster where to put material."

On the issue of contributory negligence, the former record was silent as to whether the plaintiff saw the plaster as it was piled in sacks, after delivery. On cross-examination, at the second trial, he testified as follows:

"*Q.* You saw the plaster in there after it was all done, after the man had gone away?
"*A.* Yes."

At the second trial the defendant introduced the testimony of Willard Wunsch, a plasterer in the employ of Mr. Johnke. He testified that he and another plasterer, together with two helpers, were working in the house on all of the day in question, using plaster.

Plaintiff's witnesses, Otto Williams and George Du-Bois, denied that these employees of Mr. Johnke were working on that day. It further appeared that Gustav Johnke, the plastering contractor, was not present at the building on the day of the accident. Mr. Wunsch testified that Mr. Johnke did not have a foreman on the building on the day of the accident. It is true that Wunsch calls himself the "senior plasterer" in the employ of Mr. Johnke. His testimony was to the effect that he was not on the ground floor of the building when the plaster was delivered; that he was upstairs all day working. He did not know how long it took the defendant's driver to deliver the material, nor did he know the time when it was delivered. The helper was not on the ground floor of the building at the time of the accident; nor was it shown that he was on the ground floor of the building when the material was delivered. No talk was had with the defendant's driver by Wunsch or his helper, if they were there. They were both busily engaged during the entire day doing the plastering work in the upstairs rooms.

The plaintiff's testimony is uncontradicted to the effect that he saw no one there, except his coworkers in the tile setting business, and their helpers.

Mr. Wetzel, upon the last trial, testified first, that on the day in question the plastering contractor had four men there, and later on he testified that he was not sure of it. He said: "I would not want to swear that they were there on the day of the accident, or whether it was the following day." This is practically all the new testimony on this phase of the case.

The following facts should likewise be added as bearing on the claimed negligence of the plaintiff: He testified that as a tile setter he had not become acquainted with the construction of buildings. He said "I do not know anything at all about the construction of buildings." On the day in question he was working on the porch of this building; his work required him to be in a kneeling position; and he had no warning of anything being defective. He testified that he did not know of any danger in continuing to work on the porch, and the fact that bags of plaster were piled in the bay window, within the building, did not cause him to feel that he was in any danger out there on the porch, where he was working.

Upon the cross-examination of the witness Wetzel, the following occurred:

"*Q.* It would be perfectly obvious to anybody, wouldn't it?

"*A.* Yes.

"*Q.* That would be a dangerous situation, which any ordinary man would undoubtedly see?"

This question was objected to by plaintiff's counsel and the objection sustained, and a motion to strike out the preceding question and answer was granted.

Upon direct examination of the plaintiff, he was asked the following question:

"*Q.* I will ask you whether or not the fact, after putting 100 to 110 bags of plaster in the bay window, would it at the time, or did it at the time, spell to your mind any thought of there being any danger?

"*A.* No, sir."

This question and answer were objected to, and motion to strike out was made by defendant's counsel, which objection and motion were overruled.

At the conclusion of the proofs, both parties having rested, the defendant moved the court (which motion was denied) to direct a verdict for the defendant for the following reasons:

"*First.* The employees of the plastering contractor who were doing the plastering of the house in question were on the premises, engaged in the work of plastering, all the day on which the plaster was delivered and piled in the manner complained of, and it was their duty to take such care of the plaster delivered as to prevent injury to the others through the plaster remaining in one place for several hours.

"*Second.* The plaster was delivered and piled in the room in which the persons by whom the same was to be used were at work with their mortar box mixing plaster, and under such circumstances it became their duty to so conduct their work and to so care for the plaster delivered to them as to prevent a dangerous condition arising.

"*Third.* The delivery of the plaster in the room in which the persons by whom the same was to be used were at work with their mortar box mixing plaster, was such an acceptance of the plaster and of the delivery thereof by those persons as to impose upon them all responsibility therefor from that time forth, and defendant was wholly relieved of any liability or duty in the premises.

"*Fourth.* The plaintiff was guilty of contributory negligence in continuing to remain, for the length of time which he did, in such close proximity to the alleged dangerous condition created by the servant of the defendant.

"*Fifth.* The plaintiff was guilty of contributory negligence in going upon and working upon that part of the porch in question and adding to the alleged overloading of the floor thereof his own weight and the weight of the tile laid by him and of the wet cement in which the same was laid.

"*Sixth.* If the issue herein were submitted to the

jury, and the jury should. find that the piling of the plaster in the place and in the manner in which it was piled would convey to the mind of an ordinarily prudent person notice that a dangerous condition had been created, then the plaintiff was guilty of contributory negligence in continuing to remain in the immediate presence of such conditions; or, if the jury should not find that the piling of the plaster in the place and in the manner in which it was piled would convey to the mind of an ordinarily prudent person notice that a dangerous condition had been created, then defendant is not liable, as its servant has not been guilty of any negligence."

The defendant also requested the court to charge the jury as follows:

"1. I charge you, gentlemen of the jury, that if you find from the testimony of this case that the employees of the plastering contractor who were doing the plastering of the house in question were on the premises engaged in the work of plastering all the day on which the plaster was delivered and piled in the manner complained of, then I charge you, as a matter of law, that it was their duty to take such care of the plaster delivered as to prevent injury to the plaintiff by reason of the plaster remaining in one place for several hours, and you must find a verdict for the defendant of no cause of action.

"2. I charge you that if you find from the evidence that the plaster was delivered and piled in the room in which the person or persons by whom the same was to be used were working with their mortar box mixing plaster, then I charge you that, under the circumstances, it became their duty to so conduct their work and to so care for the plaster delivered to them as to prevent a dangerous condition arising and you must find a verdict for defendant of no cause of action.

"3. I charge you that if you find that the plaster in question was delivered in the room in which the person or persons by whom the same was to be used, were at work with their mortar box mixing plaster, then I charge you that these facts constitute such an acceptance of the plaster and of the delivery thereof by those persons as to impose upon them, as a matter

of law, all responsibility therefor from that time forth, and, as a matter of law, defendant was by reason thereof wholly relieved from any liability or duty in the premises and you must find a verdict of no cause of action."

None of the above requests were given.

The trial court submitted the case to the jury in a lengthy charge, in the course of which it used the following language:

("Defendant claims that they are not responsible for this injury, that this plaster—they admit that they sent that to the building to be delivered, but they claim it was not through their fault that this accident occurred, if the man placed it there, nor do they assume that they were responsible.)    *    *    *

. "Now, some statement has been made in regard to an action against the principal for the failure of his agent to exercise this degree of care and caution, that is necessary under the circumstances. I say to you that the agent or servant of the person, the fact that he was an agent or servant, makes a person just as responsible as he would be if it was himself. It is his duty to employ people to do the work that is for him to perform in such a manner as not to injure other people by the negligence of his servants, and if they do (if the servants or agents of corporations or persons fail to exercise such a degree of care or caution, as I have stated to you, then, the principal is guilty of negligence. He may not be morally guilty, yet he is in one way, yet it is his duty to employ such people as will avoid injuring other people by their negligence).  .  *    *    *

"I instruct you if you believe from the evidence in the case that the defendant company through negligence on its part created a situation, causing injury to the plaintiff and was the proximate cause of said injury, and that the plaintiff was free from negligence on his part, then you will return a verdict in favor of the plaintiff.

("I charge you that negligence and carelessness as applied in this case, means the failure to exercise ordinary care, that is, such care as ought to be expected of a reasonable prudent person under similar

circumstances. I charge you that if from the evidence in the case, you find that under the circumstances the defendant company's servant was guilty of negligence in piling the quantity of plaster in one place without regard to the safety of others working in the same building, and that said negligence was the proximate cause of the injury, you will return a verdict for the plaintiff.)

("Now, as to what is the proximate cause I will instruct you as well as I can. The proximate cause is either the ordinary, common or probable circumstances causing the negligent act of the defendant. Proximate cause is one which is a natural consequence, which is the natural sequence undisturbed by any incident causes this result complained of. To be proximate, the cause must be one without which the accident or injury would not have occurred.)  * * *

("I instruct you that if from the evidence in the case you find that the servant of the defendant company was warned by other workmen about the premises that to continue hauling the plaster, such as he was doing, might result in the collapse of portions of the building and injury of those working about the same, and in view of such warning a reasonable and prudent man would not have continued to pile the sacks in one place, the defendant was guilty of negligence.)

("I instruct you that if you find from the evidence in the case, that the defendant company, through its servant delivered the sacks of plaster in a dangerous manner and that as a result of such dangerous delivery, and that such delivery was the proximate cause of the collapse of the walls, and the injury to the plaintiff, the defendant company has been guilty of negligence in law, and that would in no manner excuse and undo the negligence of the defendant, C. H. Little Company.)

("In other words, the fact that somebody else was negligent, if this company was first negligent in regard to this matter, then the proximate cause would be because this company was negligent in placing that material in that bay window.)

("Where delivery is undertaken by the seller, and

200—Mich.—24.

he is advised that the disposition of the goods in a certain way at the place of delivery is dangerous to the structure in which they are placed, and another disposition is safe, his duty to prevent harm is clear, and the obligation would rest upon any person, having knowledge of the unsafe condition created and the probable consequences, to prevent the injury.)

("That is to say, if any of these other employees saw where it was an unsafe condition, and knew the fact that this material was delivered in this unsafe way, then it was their duty also to prevent the injury, but the proximate cause is the action of the man who delivered that plaster in the way in which he was instructed not to, if a reasonably prudent person would not have done so under all the circumstances of the case.)

("The fact that the plastering contractor has received the goods which had been placed at his disposal did not affect or relieve the defendant of the duty to exercise reasonable care, nor excuse his original misfeasance in the absence of evidence that the contractor should undertake to do the plastering, knew about the condition which was created or had reasonable grounds for apprehension would be created.")

The jury returned a verdict for plaintiff in the sum of $8,500 damages, and judgment was entered thereon. The defendant brings the case here upon writ of error, and error is assigned upon the refusal of the court to give defendant's requests to charge above set forth, and each of them; in refusing to direct a verdict for the defendant upon the several grounds specified in defendant's motion therefor, in those parts of the charge in parentheses above quoted, and in the rulings with reference to the reception of evidence in the instances above set forth.

On the former appeal this court held that a verdict had been improperly directed by the trial court.

Counsel for appellant, in their brief, discuss the matter of independent, intervening, effective cause. They do not seriously contend that the appellant was

free from negligence. The contention seems to be that, although the appellant was originally guilty of negligence in piling the material in such a manner as to cause the floor to fall, there intervened a subsequent agency which was likewise negligent, and that the intervention of this agency excused the appellant.

Upon a careful reading of the opinion and the record upon the appeal, as well as the record upon the second trial—now before us—we are of opinion that in no essential way is the case to be distinguished from the one presented in the previous record. In our opinion the essential features of it are the same. The only witness introduced by the defendant was Willard Wunsch. His testimony showed that he was at the building at the time of the accident; that he was an employee of Johnke, the plastering contractor; that he had a laborer assisting him, and that there was no foreman for Johnke on the job. The duties of this witness were those of a plasterer; he was, during the entire day, working on the second floor of the building. There is no claim that he signed a receipt for the material delivered, or saw it; and it does not appear that he even had charge of the work. He did not speak to the driver who delivered the material, nor did he claim to have, or exercise, any control over it during the day. It appears distinctly that the only persons with whom the driver had any conversation on that day were the plaintiff and Wetzel, the architect. That conversation appears in the original statement of the case.

When the case was before this court upon the former appeal, Mr. Justice OSTRANDER, in the opinion, said, on page 321:

"The facts support the conclusion that for some five or six hours before the porch collapsed the plaster was completely and unconditionally at the disposal of Johnke, the buyer."

And on page 325:

"It does not appear that contractor Johnke knew anything about the condition which was created, or had reason to apprehend that it would be created. Appellee has not made out a case within the governing principle it relies upon. Whether plaintiff was himself negligent is a question not determined by the trial court."

It is conceded that Johnke was not at the building when the material arrived, nor was he present at the building between that time and the time of the accident; nor was there a superintendent or foreman of Johnke's in charge. The only person present (if we are to accept Wunsch's testimony) was a plasterer and his laborer. The plasterer was at work on the second story of the building; his helper was mixing plaster. There is no claim that the driver who delivered the material spoke to the plasterer or informed him where he was placing the material.

Giving the strongest probative force to the testimony of the witness Wunsch, the case in no essential differs from the one upon the previous appeal. Neither Johnke nor any one with authority from him "knew of the condition which was created, or had reason to apprehend that it would be created."

Upon the subject of contributory negligence, which was urged by appellant in its motion to direct a verdict, we do not think the court erred in submitting that question to the jury. There is no criticism of the charge of the court upon the subject of contributory negligence, if that were a proper question to submit to the jury.

It is claimed that certain knowledge of the plaintiff was shown upon the second trial which did not appear upon the first trial. There is no doubt that the presence of the plaster in the sacks or bags was obvious, but it does not follow that the plaintiff was

guilty, as matter of law, of contributory negligence. The evidence is very clear that the plaintiff had no knowledge with reference to the strength of the structure, he having distinctly testified—that testimony being uncontradicted—as follows:

"I had no knowledge of the construction of that porch, and no knowledge of the construction in general of buildings."

He was working out upon the porch. In our opinion the questions, both of the negligence of the defendant and the negligence of the plaintiff, were questions of fact for the jury, and the court did not err in so treating them.

There are many assignments of error and much criticism of counsel, upon the charge of the court. It having appeared, as we have already indicated, that the contractor, Johnke, knew nothing about the condition which was created, and had no reason to apprehend that it would be created, and that he had no agent or person authorized to act for him in receiving the material or directing its disposition, we think there was no error in the refusal of the court to give defendant's requests to charge. If, as we think, the defendant, upon the last trial, did not bring itself within the rule which it invoked, then there was no independent, intervening, effective cause, and what the court said to the jury in that portion of the charge which is excepted to with reference to proximate cause, might well have been omitted by the court. The theory failed and might well have been disregarded in the charge. In other words, the elimination of Johnke as an active, intervening cause of the accident (aside from the negligence of the plaintiff) left but one question, *i. e.*, the negligence of defendant. This court has often held that a theory, unsupported by proof, is not a proper matter for a jury's consideration. *Lee* v. *Longwell,* 136 Mich. 458; *Woods* v.

*Palmer*, 151 Mich. 30; *Charette* v. *Village of L'Anse*, 154 Mich. 304; *Saros* v. *Avenue Theatre Co.*, 172 Mich. 243.

As was said in *Lewis* v. *Brick Co.*, 164 Mich. 489, 501: "Affirmance of the judgment does not imply approval  *  *  *  of all that was said to the jury."

It is also complained that the court did not state the defendant's theory of the case; and that it failed to give a sufficiently comprehensive statement of its claim; but no request was made for more specific instructions upon this point. The instruction seems to have been correct so far as it went, and this court has frequently held, that the failure to give more specific instructions is not erroneous, in the absence of a request therefor. *Hammond* v. *Porter*, 150 Mich. 328; *Spray* v. *Ayotte*, 161 Mich. 593; *Lewis* v. *Brick Co.*, *supra*; *Totten* v. *Totten*, 172 Mich. 565; *Hartwig* v. *Kell*, 199 Mich. 603, 611.

The charge is criticised where the court said: "He might not be morally guilty, yet he is in one way," etc., above quoted. The comment of the court here given was at the conclusion of the statement, that an employer was responsible for the acts of his servant. Taken in connection with the language with which it was used, we do not think there was reversible error. The instruction of the court should be considered as a whole, and not by isolated portions. This doctrine has frequently been referred to, and it is hardly necessary to cite cases.

Certain rulings of the court upon the introduction of testimony are presented by the assignments of error, which questions appear herein. We do not think it was error for the court to decline to permit the architect to answer the question: "That would be a dangerous situation which any ordinarily prudent man would undoubtedly see?" The question clearly called for a conclusion. While it is claimed that the witness

was an expert, it can hardly be said that he was an expert on what an ordinarily prudent man would have seen. That was a question for the jury.

The court also refused to strike from the testimony the answer of the plaintiff, that the presence of the plaster did not cause him any thought of danger. This was a fact and not a conclusion. It was a step bearing upon the question of the contributory negligence of the plaintiff, for if there was danger which he fully appreciated, he might have been guilty of contributory negligence. It was therefore a fact which it was competent for him to testify to, which, it is true, might not have been controlling of the whole question; but the jury were instructed to consider what an ordinarily prudent man would have done under the whole circumstances.

Viewing the entire case upon this record, we are of opinion that it cannot be said that the trial resulted in a miscarriage of justice, and we find no reversible error in the record, and the judgment of the lower court is therefore affirmed.

Ostrander, C. J., and Bird, Moore, Steere, Brooke, Fellows, and Kuhn, JJ., concurred.