## SILVERGLADE v. DEAN et al.
### Civ. No. 1484.

United States District Court
D. North Dakota, N. E. D.
Oct. 21, 1949.

Wattam, Vogel, Vogel & Bright, Fargo, North Dakota and Walton, Hubbard, Schroeder, Lantaff & Atkins, Miami, Florida, for plaintiff.

Day, Lundberg, Stokes, Vaaler & Gillig, Grand Forks, North Dakota, for defendants.

DONOVAN, District Judge.

Plaintiff, a citizen of Florida, brings suit to recover commission as a real estate broker. Defendants, residents of North Dakota, deny they employed plaintiff, and deny he rendered service to them in any manner.

The case was tried to the court without a jury. On motion of defendants, the action was dismissed as to defendants Royce S. Dean and Elmer Osking, co-partners doing business as Dean-Osking Co.

The sole issue for determination is whether plaintiff rendered services as a real estate broker to defendants Royce S. Dean and Elmer Osking for which they agreed to pay him a commission. The controversy presents an issue of fact for determination by the court. Plaintiff's contention is concisely set forth in the complaint.[1]

1. "3. During the months of April, May, June, and July, 1946, the plaintiff entered into the service of the defendants, under the terms of which the defendants employed the plaintiff to negotiate the purchase by the defendants of the land, cannery, office buildings, warehouses, power plant, machinery and equipment from the Belle Glade Canning Company, a partnership doing business in Belle Glade, Florida.

"4. Pursuant to such employment the plaintiff caused the defendants and the Belle Glade Canning Company to enter into negotiations for the purchase of the property described in paragraph 3 herein. Such negotiations resulted in the defendants and the Belle Glade Canning Company entering into a written contract as of April 19, 1946, under the terms of which, and for a consideration of $25,000.00 the defendants obtained from the Belle Glade Canning Company an option to buy the above described property. Such contract contained the following provisions:

"'9. The partnership shall not be liable for any commission, fee or other

It is not disputed that plaintiff was a licensed real estate broker in Florida during the period we are here concerned with; that Belle Glade Canning Company, owned by a partnership consisting of Willoughby J. Rothrock, W. W. Thrasher, Linton A. Thrasher and John H. Rothrock, operated a canning plant in Belle Glade, Florida, and that they desired to sell said plant. Officing with plaintiff was one James L. Bolger, a certified public accountant, who acted as auditor on occasions for a Mr. Eugene Borchardt, a Florida farmer. Borchardt was associated with defendants in the handling of their seed potatoes and a fresh pack business, for which purpose Borchardt and defendants built a fresh pack shed at Belle Glade in 1945. At the suggestion of Bolger, Willoughby J. Rothrock called at plaintiff's office and had some talk with plaintiff's son-in-law and employee, Walter R. Cunningham. Plaintiff subsequently submitted a plan for the sale of the plant. During all of this time defendants' associate Borchardt was endeavoring to negotiate the purchase of the canning plant by himself and defendants from the Belle Glade Canning Company.

Willoughby J. Rothrock testified that up to March, 1946, he had never heard of or met plaintiff, and that he met Bolger for the first time in Borchardt's office in Belle Glade when Bolger was introduced as "Borchardt's packing house auditor." Later, on April 2, 1946, Borchardt invited Willoughby to accompany him to Bolger's home in Miami. Willoughby limits plaintiff's connection with the matter here in suit to an inspection of the plant so as to "familiarize himself with it." [2]

expense incurred in conjunction with this option or the sale contemplated hereunder, it being the express understanding and agreement that any such commission, fee or expense is an obligation incurred by and for the benefit of the Buyers and will be paid and discharged by them without recourse to the partnership.'

"Thereafter and during the month of July, 1946, and to the best of plaintiff's knowledge, information and belief on July 6, 1946, the sale of the above described property, contemplated by the contract dated April 19, 1946, was consummated by the payment to the Belle Glade Canning Company by the defendants of the sum of $267,000.00.

"5. The plaintiff has fully performed all of the conditions of his contract with the defendants. The defendants agreed to pay to the plaintiff for the services performed by him a commission of 10% of the total purchase price of such property, or a commission of $26,700.00. Such commission of $26,700.00 is fair, reasonable and customary. No part of such commission has been paid by the defendants to the plaintiff, although the plaintiff has duly demanded the same."

2. "During this evening Mr. Bolger said that there had been some transactions handled in the real estate field in which people in high income tax brackets had been acquiring properties and actually paying for them through tax savings. Mr. Bolger told me that if I would stop around at his office the next morning, he would give me a copy of a plan that he was preparing for Mr. Borchardt. * * * On Thursday afternoon I had a telephone call, and it is my recollection that both Mr. Bolger and Mr. Borchardt talked to me from Miami and asked me if I would go back to Belle Glade, that a man was coming up to see me at Belle Glade, who was Mr. Bolger's tax specialist. I went over to Belle Glade, and that is the first time, about four o'clock in the evening, I should say, as nearly as I can remember, that I had the pleasure of meeting Mr. Silverglade. I took Mr. Silverglade through the factory. * * * As I understood it from Mr. Bolger, he just wanted to examine the property, that is all, familiarize himself with it. For what purposes, it wasn't disclosed. * * * On Saturday, which would be the 6th of April, Mr. Borchardt's brother-in-law told me that Mr. Borchardt had gone West and that Mr. Borchardt had left for me a copy of the plan that had been the result of Mr. Borchardt's visits with Mr. Bolger in Miami. * * * I met Mr. Silverglade, as I told you, in Belle Glade for the first time and made an engagement with Mr. Silverglade to come to Fort Pierce the next day, where I was to introduce him to Mr. Henry B. Stolz. He was the operating manager and an officer of the Sunrise Products, Inc., who have plants at Fort Pierce, Florida, and at Salerno, Florida. Mr. Silverglade arrived in Fort Pierce. I introduced him to Mr. Stolz. We went through the cannery at Fort Pierce, and I am under the impression that he also went through

Obviously, the Canning Company was interested in but one thing, and that was to sell its plant for the best price obtainable. Plaintiff inspected the plant. So did Borchardt. Up to this point plaintiff was laying the foundation for the sale of his services as a real estate broker, and Borchardt was primarily interested in expanding his own interests in the community.

. On April 5, 1946, plaintiff, without benefit of an invitation from defendant, journeyed to Grand Forks, North Dakota, to interview defendants, and for the first time plaintiff and defendants met. At this meeting plaintiff contends he advised defendants of the conditions and terms governing the purchase of the Belle Glade Canning Company plant. Borchardt was also present. Defendants contend nothing was said or done during this visit, other than plaintiff's sales talk as a tax expert, and that they confined their discussion relative to the business operations of the Canning Company to their associate, Borchardt. As stated by counsel for plaintiff, Borchardt would appear to be "a very important witness in this case. Both sides * * * made an effort to get his testimony." That he did not testify was no fault of the plaintiff.

Willoughby says plaintiff was not hired to sell this property, and explains plaintiff's connection as employment for the purpose of selling plants of the Sunrise Products, Inc., at points in Florida other than Belle Glade. Plaintiff's testimony, of course, opposes Willoughby's, and defendants' claim that plaintiff had nothing to do with the sale of the property. On April 19, 1946, defendants were given an option to buy the Canning Company plant at Belle Glade, and with reference to the entire matter Willoughby testified:

"The Belle Glade Canning Company did not at any time employ Mr. Silverglade in any capacity."

the cannery at Salerno, but I wasn't with him at the time. He asked Mr. Stolz for a lot of information regarding the value of the buildings, what the cost price was on the books, and what not, and he sat down at the desk there and came up with a proposed plan that was going to net, if I remember correctly, $600,000. * * * It had nothing to do

Plaintiff and Cunningham were present in the offices of the Canning Company's lawyer in Philadelphia when the transaction we are here concerned with was closed. Defendants deny inviting plaintiff to be present or having knowledge as to why plaintiff attended, claiming he was an "interloper" at best. Ultimately the original option was changed, reducing the purchase price from $380,000 to $267,000. The written instrument clears the Canning Company of liability for any commission arising out of the sale; hence Willoughby's testimony is quoted, supra, as that of a material witness in the case, and the one being the least interested in the outcome of the suit.

■ The claims and testimony of plaintiff and defendants are sharply in conflict. Plaintiff's testimony described a contract entered into by him with plaintiff in North Dakota. The property is located in Florida. The situs of the real estate is not controlling. Campbell v. Duncan, et al., D.C., 84 F.Supp. 732. Whether the contract is based on North Dakota or Florida law is of no great significance, as those states are agreed on the fundamentals of the applicable law. Fulton et al. v. Cretian, 17 N.D. 335, 117 N.W. 344. See Annotations, 44 L.R.A. 321, 43 A.L.R. 1103.

■ Whether or not the plaintiff was employed by defendants is a question of fact. Paulson v. Reeds, 48 N.D. 90, 183 N.W. 641. Plaintiff does not claim that he had the exclusive agency to bring about the purchase. Whether plaintiff was the procuring cause of sale is also a question of fact. Jackson v. Lenox Hotel Co., D.C., 79 F.Supp. 969.

■ The burden of proof is upon the plaintiff to establish that he was hired by defendants, and that he was the procuring cause of the sale. The fact that the controlling contract releases the vendor from

with the Belle Glade Canning Company. Mr. Stolz is not in any way interested, and had nothing to do with the Belle Glade Canning Company. * * * Our conversations at Belle Glade had to do with the Belle Glade plant, which was an inspection of the plant by Mr. Silverglade."

any liability for a commission would not bind the vendees to pay the same without appropriate commitment by defendants to pay such commission.

■ A broker who produces one willing to sell upon the terms of the buyer, as here claimed by plaintiff, if supported by the evidence, would necessitate payment of the commission agreed upon. Does the evidence support the burden here placed upon plaintiff? To answer in the affirmative not only would require the trier of the facts to deny credence to the testimony of each of the defendants positively denying the claim of plaintiff in the respect claimed by him, but also calls upon the court to view the testimony of Willoughby J. Rothrock, in the words of plaintiff's counsel, as "entirely unbelievable." I am not convinced that such a conclusion finds support in the record.

■ True, in the agreement between Belle Glade Canning Company and defendants, it is expressly agreed that the vendor "shall not be liable for any commission." But this agreement creates no privity between any of the parties thereto with plaintiff. The evidence is insufficient to show plaintiff was employed as a broker by defendants. Clearly, I cannot say from the record of this case that the plaintiff was the efficient and effective cause of bringing about the actual sale of the property. A broker does not earn his commission simply by telling the purchaser that the property is for sale, or showing the purchaser the broker's plan for concluding the deal. There must be a hiring of the broker by the party charged with the commission, and it must be demonstrated that there was such an understanding between the parties, and that good faith was observed by all. Kane v. Sherman, 21 N.D. 249, 130 N.W. 222; Whitcomb et al. v. Bacon, 170 Mass. 479, 49 N.E. 742, 64 Am.St.Rep. 317. The broker must at least bring the vendor and vendee together.

The diverse application of the law often leads to embarrassment, for not infrequently brokers thrust themselves into such transactions without the benefit of invitation. 12 C.J.S., Brokers, § 60; Wood v. Palmer et al., 151 Mich. 30, 115 N.W. 242; 43 A.L.R. 847. Suffice to say, however, where the agency to sell is not exclusive, the reports disclose unanimous agreement that in order to recover a commission the broker has the burden of proving that he was hired and also the *procuring cause* of the sale. Segerstrom v. Webb et al., 187 Minn. 20, 244 N.W. 49. Further, that to be the procuring cause, he must initiate a course of action in such sequence, and without a break in continuity, as to attain such sale or purchase. 12 C.J.S., Brokers, § 91, page 209.

■ The material facts of the case here under consideration are too controversial to permit recovery by a plaintiff who is a broker of considerable experience, and who, by a few strokes of a pen, or with the aid of a typewriter, could have reduced to writing in words of his own choosing, all that would be necessary to charge these two defendant farmers with the payment plaintiff here seeks to recover. The evidence here does not support a finding that there was an express or implied contract supporting plaintiff's claim for a commission. A broker cannot recover a commission for services rendered without express or implied authority.

Referring to paragraph 9 of the contract, which protects the vendor from any possible claim for commission, plaintiff, in his reply brief, says:

"There is only one possible person to whom that paragraph in the contract would refer, and that person is Silverglade."

Granting that Rothrock did have such thought in mind, this would not create privity of contract between Silverglade and defendants. In some respects the instant case is not unlike that before the Supreme Court of Florida in Howell v. Blackburn, 100 Fla. 114, 129 So. 341. See also Dickinson v. Hanley et al., 193 Mich. 585, 160 N.W. 389, Ann.Cas.1918C, 1063; Stevens v. Brimmer, 35 Wyo. 452, 251 P. 1, 49 A.L.R. 919.

Plaintiff's case was presented in a thorough, lawyer-like manner, and the court, giving the record a reasonable construction

in plaintiff's favor, must hold plaintiff did not sustain his burden of proof. 12 C.J.S., Brokers, § 15c, page 42.

Defendants may submit findings of fact, conclusions of law, order for judgment and form of judgment, upon timely and appropriate notice to opposing counsel.

Plaintiff may have an exception.