### HOGLE v. MEYERING.

1. APPEAL AND ERROR—TRIAL—FINDINGS OF COURT.
   Refusal of the trial court to make a requested finding of facts and law is not reviewable on appeal where the evidence tends to support the ruling.

2. BROKERS — PRINCIPAL AND AGENT — FIDUCIARY RELATIONS — ADVERSE INTEREST OF AGENT.
   The law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal.

3. SAME—GOOD FAITH—SECRET PROFIT.
   A broker employed to effect an exchange of real property will not be permitted to retain a secret profit, made by securing an option on the property of the owner with whom his principal was dealing, at a certain price, and conveying it to such principal at an advance, which he falsely represents to be the lowest obtainable offer.

4. PLEADING—JOINDER OF CAUSES OF ACTION—STATUTES.

> Under 3 Comp. Laws, § 10421, permitting an action of assump-
> sit for fraud, a count for fraudulent profits made by a real
> estate broker may be joined with the common counts and
> the plaintiff may recover his damages, together with com-
> missions paid in ignorance of the fraud, as money equitably
> due him.[1]

5. BROKERS — PRINCIPAL AND AGENT — FIDUCIARY RELATIONS —
COMMISSIONS.

> On grounds of public policy, a broker is not entitled to com-
> missions for procuring the sale of land to his principal at
> a price greater than the owner asks, under such fraudulent
> representations as to the real price, and could recover com-
> missions from both parties only by bringing them together to
> make their own bargain without his interference.

Error to Wayne; Murphy, J. Submitted February
14, 1910. (Docket No. 149.) Decided June 6, 1910.

Assumpsit by George Hogle against John H. Meyering
and another for fraud and deceit. A judgment for plain-
tiff is reviewed by defendants on writ of error. Affirmed.

*Walker & Spalding*, for appellants.

*Elmer E. Hymers* and *George A. Safford*, for appel-
lee.

STONE, J. This is an action of assumpsit. The decla-
ration consisted of all the common counts, and a special
count seeking to recover damages for the fraudulent con-
duct of the defendants in the premises as alleged, in as-
sumpsit, under the provisions of section 10421, 3 Comp.
Laws. There was a bill of particulars containing two
items besides interest, to wit, amount received by defend-
ants in excess of amount at which property was purchased
by defendants for plaintiff, $890; commissions wrongfully
claimed by defendants, and to which they were not enti-

---

[1] On the question of fraud and secret dealings of real estate
broker as affecting commissions, see note to *Leathers* v. *Canfield*
(Mich.), 45 L. R. A. 33.

tled by reason of their fraudulent conduct, $200. The plea was the general issue. The case was tried before the court without a jury, and findings of fact and conclusions of law were filed as hereinafter set forth.

The history of the transaction is substantially as follows: On March 19, 1907, the plaintiff was the owner of a certain piece of vacant real estate located in the city of Detroit, and valued by him at $4,000. On or about the above date the plaintiff employed the defendants as his agents to effect a sale or exchange of his said property. Between the above date and April 4, 1907, defendants negotiated an exchange of the plaintiff's said property for other property in the city of Detroit, owned by the Citizens' Savings Bank of Detroit, referred to in the declaration as the "Terrace" property. The plaintiff claims as follows: The defendants conducted all of the negotiations, and the plaintiff and the officers or agents of the said bank did not discuss the transaction nor the terms thereof. While so acting as plaintiff's agents, and while negotiations for said exchange of property were pending, the defendants, without the knowledge of plaintiff, sought to obtain from the said bank an agreement, whereby the said bank would pay to the defendants a commission on the sale of said terrace property; but, failing to agree upon the amount thereof, the defendants, without the knowledge of the plaintiff, procured from said bank an option of purchase, whereby the said bank agreed to sell the said terrace property to the defendants, subject to a mortgage of $8,000, the defendants to pay therefor the sum of $7,110 in cash, and cause to be deeded to the bank a lot 100 feet square on the southeast corner of Twelfth and Spruce streets (the same being plaintiff's vacant property), the bank having fixed a valuation of $4,000 on said lot. The defendants withheld from the plaintiff all knowledge of their attempted negotiations with the bank for commission on the terrace property, and the fact that they had procured an option from the bank on said property for the price at which it could be obtained; and after

procuring said option, and on the evening of the same day that it was procured, defendants went to Pontiac—the plaintiff's home—and represented to him that the directors of the bank had fixed the valuation of the said terrace property at $20,000, and that the bank would not accept a lesser sum, and that it could not be procured in exchange for plaintiff's vacant property for less than $20,000. The plaintiff objected to paying more than $19,000, and thereupon defendants said to plaintiff:

"We are acting in your interests. We want to get you this property as cheaply as possible, but Mr. Smith of the bank had to call a special meeting of the directors to consider this matter. They had intimated to him that they would receive no offer, accept no offer less than $20,000."

The plaintiff testified upon the trial that he believed the said representations so made to him by the defendants, and was deceived thereby, and, relying thereon, and in ignorance of the facts, authorized the defendants to procure for him the said terrace property from the bank for the sum of $20,000, the bank to take the plaintiff's said vacant property in exchange and part payment at the agreed sum of $4,000, and signed the paper, Exhibit 14, which is a typewritten copy of Exhibits 4 and 8, which appear below. On the following day, March 26th, the plaintiff claims that he went to defendants' office in Detroit and demanded a direct contract with the bank, instead of with the defendants as agents, claiming that he wanted a contract direct with the owners; defendants claiming that plaintiff wanted it to show to the probate court. On that day exhibits 4 and 8 were obtained. They are as follows:

Exhibit 8:

"J. H. & J. R. MEYERING,
"REAL ESTATE, STOCKS, BONDS, SECURITIES,
"728–9 Chamber of Commerce.
"Phone Main 5713.
"DETROIT, MICH., March 25, 1907.
"I hereby agree to purchase from J. H. & J. R. Meyering as agents for Citizens' Savings Bank the property

located on the northeast corner of Forest and Commonwealth avenues, being a seven family terrace, in the city of Detroit, Wayne county, Michigan, and pay therefor the sum of twenty thousand dollars on the following terms: My lot 100x100 ft. on the southeast corner of Spruce & 12th Sts. valued at $4,000.00—cash $8,000.00. You to furnish loan of $8,000.00 at 5 % for five years. I to receive an abstract written up to date, also tax statements and a clear title.

[Signature] "GEORGE HOGLE [L. S.]
"Witness: BERTHA PULFORD.
"CLIFTON E. FERGUSON."

Exhibit 4:

"J. H. & J. R. MEYERING,
"REAL ESTATE, STOCKS, BONDS, SECURITIES,
"728-9 Chamber of Commerce.
"Phone Main 5713.
"DETROIT, MICH., March 26, 1907.

"In consideration of the sum of $1.00 to me in hand paid, the receipt whereof is hereby acknowledged, and to be considered as part of the purchase money, I hereby agree to sell the property located on the northeast corner of Forest and Commonwealth avenues, being a seven family terrace in the city of Detroit, Wayne county, Mich., to J. H. & J. R. Meyering as agents for Mr. Geo. Hogle for the sum of Twenty thousand Dollars the terms of sale to be as follows: You to cause to be deeded to us lot 100x100 ft. on the southeast corner of Spruce and 12th Sts. valued at $4,000.00. The balance to be paid us in cash Lot to be free and clear of all encumbrances.

"Sale to be closed on or before April 10th, 1907. I to furnish an Abstract of the property written up to date; also Tax Statements, and to give a clear title.

[Signatures] "THE CITIZENS' SAVINGS BANK,
"FRANK F. TILLOTSON, Cashier."

The plaintiff claimed, however, that he was entirely ignorant of the contents of Exhibit 4, the same being a blank at the time he signed Exhibit 8, and that, when he signed the last-named exhibit, the words and letters "J. H. & J. R. Meyering as agents for" were not upon the paper but that it read "I agree to purchase from Citizens' Savings Bank." The defendants did not at any time

make any mention or inform the plaintiff of the fact that they then held an option from the bank. That option was as follows:

Exhibit 2:

[Letter head of the Citizens' Savings Bank.]

"March 25, 1907.

"Messrs. J. H. & J. R. MEYERING,

"Chamber of Commerce, City.

"*Gentlemen:* We hereby make you the following proposition: We will deed to you or your assigns the property situated at the corner of Forest and Commonwealth avenue in Detroit, being 402, 404, 406 and 408 Forest West, and 266, 268 and 270 Commonwealth Ave., subject to a mortgage of $8,000.00 which is now on said building, part or all of which can be paid at any interest date; you to pay us $7,110.00 in cash and cause to be deeded to us a lot situated on the S. E. Cor. of 12th and Spruce Sts., being 100 ft. square, this lot to be clear of all encumbrances. This proposition is to be net to the bank, you securing your commission in excess of the amount of cash named, we to furnish Burton or Union Trust abstract, and you to furnish not less than 2 abstracts on the 100 ft. lot. This proposition holds good until Tuesday noon, Mar. 26th.

"THE CITIZENS' SAVINGS BANK,

"FRANK F. TILLOTSON, Cashier."

The defendants obtained Exhibit 4 after the plaintiff had signed Exhibit 8, and both exhibits were retained by the defendants until after the deal was consummated. Mr. Tillotson, who signed Exhibit 4 for the bank, testified that, while it was genuine, yet he could not tell how it was obtained, or when or through what manner—that he had no recollection of it whatever. On March 26th the defendants delivered to the bank a modified acceptance of the option from the bank, which was acted upon by the bank. On the same day the defendants wrote to the plaintiff a letter notifying him that the bank had accepted his (plaintiff's) offer of March 25th, adding: "And you can hold this as our acceptance of your agreement."

Upon the trial, defendant J. H. Meyering testified in regard to the foregoing matters as follows:

"Mr. Hogle came in on the 27th, and requested that we obtain a proposition from the bank—to show the court what kind of an investment he had made, on account of its being an estate property or fund. At that time we had in our possession an option for $19,110. Exhibits 8 and 4 were drawn up by me at that time and the signatures obtained from Mr. Hogle and the bank, and the witnesses put on, *with the exception that there may have been some additions.* That was the day that he came down and requested that that be done. He got a copy of the agreement he made at Pontiac, and requested that we obtain from the bank direct a proposition for the purchase of this property on account of wanting to show it to the probate court. I did not tell him at that time the bank had nothing to do with the matter now, but obtained a copy for him.

"*Q.* It was a fact, however, that the bank was not interested as between it and Hogle?

"*A.* It was and it was not. It depends upon how the question applies. At that time we had an option for the purchase of the property ourselves for the purpose of selling it direct to Mr. Hogle. Selling it direct to Mr. Hogle, and were to obtain all over $19,110.  *  *  *

"*Q.* So that when you stated in this letter (Exhibit 16), ' Your proposition of March 25, for the purchase of property, has been accepted by the Citizens' Savings Bank,' there had been no discussion of that matter, and no acceptance by the bank?

"*A.* The acceptance was only on the basis of our acceptance as it related to this particular transfer. We meant that the bank had accepted our proposition of $19,110 as it related to this transfer.  *  *  * That was the only proposition that was made, and Mr. Hogle wanted the proposition from the bank, and we wanted to keep Exhibit 13 ourselves. We didn't care to keep the proposition of the bank for $2,0000. Their proposal of $19,110 embodied all we wanted. We were never employed to buy property for Mr. Hogle. It was only as it related to our sale of the property to him—an exchange rather than a sale."

The deal was closed on April 4th, the plaintiff paying the bank $8,000, and also paying the defendants the agreed commission on his property of $200. On the following day, and without plaintiff's knowledge, the bank

paid the defendants $890 out of the $8,000 paid by the plaintiff, the same being the excess over the $19,110, for which sum the bank had agreed to sell the property to the defendants. It is not claimed the plaintiff ever authorized the bank to pay the $890 or any part thereof to the defendants. It was not paid to the defendants by the bank as a commission on the sale of the terrace property. There is no evidence to warrant such a position. The bank got what it claimed when it received the $19,110. The plaintiff testified that at the time of paying the $200 commission on his lot he did not know that the defendants had received, or were to receive, any part of the $8,000 by him paid to the bank, either as commissions, profits, or otherwise, and he did not then know that the defendants had ever procured from the bank the option for $19,110, and at the time he made the payment and settlement with defendants he says he believed that, in the entire transaction, they had acted in the utmost good faith with him as his agents. We refer to the above to show that there was evidence to support the findings.

The circuit judge filed the following findings of fact and conclusions of law:

"FINDINGS OF FACT.

"(1) Prior to and on the 19th day of March, 1907, plaintiff was the owner of a certain piece of vacant property located in the city of Detroit, Mich., valued by him at the sum of $4,000.

"(2) On or about March 19, 1907, plaintiff employed defendants as his agents to effect a sale or exchange of said vacant property.

"(3) Between the dates of March 19, 1907, and April 4, 1907, defendants negotiated an exchange of said vacant property for the terrace property mentioned in the declaration, and in such negotiations defendants acted as the agents of plaintiff in the employment above mentioned.

"(4) While so acting as plaintiff's agents, and while negotiations for said exchange of properties were pending, the defendants, without the knowledge of plaintiff, sought to obtain an agreement from the Citizens' Savings Bank, the owners of the terrace property, whereby the said Citi-

zens' Savings Bank would pay to defendants a commission on said terrace property, and, failing to agree on the amount of commission to be received by defendants from the Citizens' Savings Bank in said transaction, the defendants, without the knowledge of plaintiff, procured from the Citizens' Savings Bank an option of purchase, wherein the said bank agreed to sell the said terrace property to the defendants at a net price of $19,110, the bank to accept in exchange and part payment therefor plaintiff's said vacant property at a valuation of $4,000.

"(5) The defendants withheld from the plaintiff all knowledge of their said option from the same bank on said terrace property, and withheld from him the fact that the said terrace property could be procured for plaintiff from the said bank at a net price of $19,110 upon which plaintiff's said vacant property would be applied at a valuation of $4,000; that, after procuring said option on said terrace property, the defendants represented to the plaintiff that the directors of said bank had fixed the valuation of said terrace property at the sum of $20,000, and that the said bank would accept no lesser sum, and that it could not be procured in exchange for plaintiff's said vacant property for less than the sum of $20,000.

"(6) The plaintiff believed the representations so made to him by the said defendants, and was deceived thereby, and relying thereon, and, in ignorance of the facts, authorized the defendants to procure for him the said terrace property from the said bank for the sum of $20,000, the bank to take the plaintiff's said vacant property in exchange and in part payment at the agreed valuation of $4,000.

"(7) The terrace property could have been procured by defendants for plaintiff for the sum of $19,110 in exchange for plaintiff's vacant property taken in part payment at a valuation of $4,000.

"(8) The Citizens' Savings Bank received only $19,110 for said terrace property and accepted in exchange plaintiff's vacant property at a valuation of $4,000; and the defendants received and converted to their own use $890 of the money paid by plaintiff for the terrace property in such exchange.

"(9) The price of the terrace property in excess of $19,110 was fixed, not by the bank, but by the defendants.

"(10) The plaintiff did not know the defendants were to receive any commission from the Citizens' Savings

Bank or any profit on the terrace property on account of the transaction.

"(11) Before the plaintiff learned of the fact that defendants had received any commission from the Citizens' Savings Bank, or any profit on the terrace property on account of the transaction, defendants claimed from plaintiff 5 per cent. commission on the $4,000 valuation at which plaintiff's vacant property had been accepted by the Citizens' Savings Bank, and the plaintiff while still ignorant of the fact that the defendants had received any commission from the Citizens' Savings Bank, or any profit on said terrace property, and while ignorant of the fact that the defendants had received or converted to their own use any part of the money paid by plaintiff to said Citizens' Savings Bank on account of said transaction, paid the defendants the sum of $200 as their commission in the premises.

"(12) The procuring of said option of purchase by the defendants and the withholding of knowledge thereof from the plaintiff, and the withholding from the plaintiff the fact that the said terrace property could be procured for him from said bank at a net price of $19,110 and in partial exchange for plaintiff's said vacant property at a valuation of $4,000, and the representations so made to the said plaintiff by the defendants, and the defendants' said concealment of facts, constituted a fraud upon the plaintiff by the said defendants.

"(13) The plaintiff acted herein with due diligence after the discovery of the facts.

"(14) At the time Exhibit 13 was signed and at the time the transaction in question was consummated there was outstanding a mortgage of $8,000, bearing 6 per cent. interest, which still had considerable time to run before maturity. That defendants paid $80 or thereabouts as a penalty for the taking up of said mortgage before maturity, and $20 or thereabouts as the difference in interest between the rate borne by the then existing mortgage and the mortgage given by Hogle pending the disposition by defendants of the said Hogle mortgage.

"(15) I further find that the payment of said penalty and interest was made by defendants in the furtherance of their purpose and design, and in carrying out the fraudulent transaction by means of which they were seeking to obtain a secret profit upon the terrace property, and I therefore find that this payment is immaterial to the issue,

and has no bearing whatever upon the rights of the parties herein.

"(16) I further find that defendants were not reimbursed by plaintiff for said payments, and that they were not entitled to reimbursement, for the reasons above stated.

"(17) Plaintiff gave defendants a note and mortgage for $8,000 on the terrace property at 5 per cent. for five years, which said note and mortgage were afterwards negotiated by defendants, and upon which note defendants are still obligated as indorsers, but, in connection therewith, I further find that the procuring of said note and mortgage by defendants was for the purpose of enabling them to carry through the deal between the plaintiff and the Citizens' Savings Bank, and was in furtherance of their purpose and design to obtain a secret profit from the sale of said terrace property, and, by reason thereof, defendants acquired no rights from the plaintiff on account of said obligations, as indorsers of said note, and the fact is immaterial to the issues involved in this proceeding.

"(18) Eight thousand dollars, being the money used by plaintiff in paying the cash difference between the value of the vacant property and the terrace property, was paid from trust funds belonging to an estate of which he was the administrator, the beneficiaries being his children. The title to the terrace property taken in the transaction was taken in plaintiff personally, and that plaintiff prior to the beginning of this suit executed deeds of said property to his children, which said deeds were not recorded and were executed for the purpose of protecting his children in case of his decease prior to the final settlement of said estate. The transaction between the plaintiff and defendants was consummated in other words in the individual capacity of plaintiff, for which he used trust funds in his possession.

"The conclusions of law necessarily following, in my judgment, are herewith appended:

## "Findings of Law.

"(1) The plaintiff is entitled to recover under the special count alleging fraud the $890 received by the defendants from the money paid by plaintiff for the terrace property, this being the difference between the price paid by plaintiff, $20,000, and the price fixed by the bank, $19,110.

"(2) The plaintiff is entitled to recover back the $200 commission paid by him to defendants.

"(3) The plaintiff is entitled to recover 5 per cent. interest on both the sums above mentioned from April 4, 1907.

"(4) The plaintiff is entitled to recover in all as of April 26, 1909, the sum of $1,206, with costs to be taxed."

Defendants excepted to the judgment entered, and to the findings of fact and law, and to the refusal to find the facts and law as requested by defendants in due form. There are 17 assignments of error.

While defendants assign error because of the refusal of the court to find the facts as requested, they do not discuss that question, evidently because of the well-known rule that, where a case is tried by the court, it is the exclusive province of the judge to pass upon the testimony, and to draw inferences therefrom; and, when findings of fact proposed by a party are refused, such refusal is not subject to review in this court. *Beal* v. *Polhemus*, 67 Mich. 130 (34 N. W. 532).

The assignments of error are grouped and discussed by defendants' counsel under three heads, as follows:

(1) The undisputed evidence shows that, before the plaintiff made the exchange of lands, he knew that the defendants were acting as agents for the bank, as well as for himself, and that he made the agreement for exchange with them as such agents, so that a judgment should have been entered for the defendants.

(2) The judgment is inconsistent in including both damages for fraud in procuring the exchange, and recovery of commissions paid for effecting the exchange.

(3) Upon the undisputed evidence, the damage awarded for fraud, being the difference between the purchase price paid by the plaintiff, and the amount thereof retained by the bank, was excessive; for, as the bank was liable to defendants for a commission in event of a sale to the plaintiff, he could not have obtained the property from the bank for the net amount which the bank retained on the sale as made.

1. We think that defendants' counsel in his first point

assumes what the evidence and findings do not warrant, when he says that the plaintiff knew "that defendants were acting as agents for the bank as well as for himself, and that he made the agreement for exchange with them as the bank's agent." There was evidence that the plaintiff supposed that the defendants were acting for him, and in his interest, in getting the price at which the bank would convey the property, and that the plaintiff refused to sign any agreement with defendants' names appearing as agents of the bank, and that he wanted an option directly from the bank to him, and that it was so drawn at first. The circuit judge refused to find the facts and law to support this argument, and counsel cannot here complain of such refusal. The evidence of Mr. Tillotson, the cashier of the bank, that there was no contract of employment, so far as he knew, between the bank and the defendants whereby they were to act for the bank, is very significant. The plaintiff supposed from the representations of defendants that he was to pay the bank $20,000 for its property. The fact was that the bank had agreed to sell to defendants or their assigns for $19,110, which fact the defendants kept from the plaintiff, although they at all times claimed to the plaintiff that they were acting in his interest. It cannot be claimed that the defendants were acting for the bank in any capacity. They failed to agree upon terms by which they might represent the bank in the transaction, and became option purchasers of the property, and, without disclosing the facts to the plaintiff, continued the negotiations, still claiming to act as the plaintiff's agents in the matter; their interests being plainly in conflict.

The law will not permit a man to act in a dual capacity, and the two positions of principal and agent are inconsistent with each other. *Humphrey* v. *Transportation Co.*, 107 Mich. 163 (65 N. W. 13). In this case it was held that an agent for the sale of property loses his right to commission from his principal where he does not disclose the fact that a corporation in which he is interested as a stockholder and director is the real pur-

chaser, and that the nominal purchaser, who has a valuable contract with the seller dependent upon the making of the sale, is furnishing a large bonus towards the purchase. See authorities cited. This reasoning applies with still greater force where the parties pretending to act as agents are themselves interested as a principal in the transaction. 1 Am. & Eng. Enc. Law (2d Ed.), p. 1072, and note. An agent will not be allowed to place himself in a position in which his duty and interest conflict, or be permitted to make a secret profit out of the agency. In this State this principle is applied to public officers, administrators, agents, etc. *Beaubien* v. *Poupard*, Har. (Mich.) 206; *Walton* v. *Torrey*, Har. (Mich.) 259; *Ames* v. *Booming Co.*, 11 Mich. 139 (83 Am. Dec. 731); *People* v. *Township Board of Overyssel*, 11 Mich. 222; *Flint, etc., R. Co.* v. *Dewey*, 14 Mich. 477; *Humphrey* v. *Transportation Co., supra; McNutt* v. *Dix*, 83 Mich. 328 (47 N. W. 212, 10 L. R. A. 660); *Leathers* v. *Canfield*, 117 Mich. 277 (75 N. W. 612, 45 L. R. A. 33). As this principle is elementary, we refrain from citing further authorities.

2. In view of section 10421, 3 Comp. Laws, and the decisions thereunder, we cannot agree with counsel for defendants as to the claimed inconsistency in permitting a recovery for the $890, and also for the item of $200, which latter was paid in ignorance of the fraudulent contract of the defendants. A special count as to the larger claim might properly be united with the common counts. The smaller item, it seems to us, could be recovered under the common counts and bill of particulars as money which in equity and good conscience belonged to the plaintiff. *Hallett* v. *Gordon*, 128 Mich. 364 (87 N. W. 261); *First Nat. Bank of Ovid* v. *Steel*, 136 Mich. 588 (99 N. W. 786). The proposition that the defendants could not have enforced payment of the commission seems to be supported by abundant authority. Mechem on Agency, §§ 454, 455, 972; *Scribner* v. *Collar*, 40 Mich. 375 (29 Am. Rep. 541); *McDonald* v. *Maltz*, 94 Mich. 172 (53 N.

W. 1058, 34 Am. St. Rep. 331); *Phinney* v. *Hall*, 101 Mich. 451 (59 N. W. 814); *Humphrey* v. *Transportation Co., supra; Hannan* v. *Prentis,* 124 Mich. 417 (83 N. W. 102); *Woods* v. *Palmer,* 151 Mich. 30 (115 N. W. 242). On principle and authority, the plaintiff is entitled to recover for the money paid by him to the defendants, to which they were not entitled, and the payment of which could not have been enforced by them under the facts found by the circuit judge. Mechem on Agency, §§ 797, 798; 1 Am. & Eng. Enc. Law (2d Ed.), p. 1102, and notes; *Campbell* v. *Baxter,* 41 Neb. 735 (60 N. W. 90), citing many cases; *Lockwood* v. *Halsey,* 41 Kan. 166 (21 Pac. 98); *Cannell* v. *Smith,* 142 Pa. 25 (21 Atl. 793, 12 L. R. A. 395). This right rests upon the ground of public policy.

3. In support of defendants' third point counsel cites the case of *Montross* v. *Eddy,* 94 Mich. 100 (53 N. W. 916, 34 Am. St. Rep. 323). That case holds that a broker who simply brings the parties together, and has no hand in the negotiations between them, they making their own bargain without his aid or interference, can legally receive compensation from both of them, although each was ignorant of his employment by the other. This is a sound doctrine, but we are unable to see its applicability to the facts of this case. The bank was not liable to defendants for a commission under the option. The relation of the parties and the circumstances surrounding the transaction have been so fully stated that repetition is unnecessary. Suffice it to say that the defendants conducted the negotiations in so far as the plaintiff was concerned entirely, claiming to act in his interest and for him in getting the bank property as cheaply as possible. They became independent optional purchasers of this property from the bank for $19,110, and without disclosing the facts to the plaintiff. The circuit judge found upon the evidence that supported such finding that they fraudulently advised the plaintiff that the directors of the bank

had fixed the price at $20,000, whereas in truth, the defendants fixed that price.    These facts were kept from the plaintiff's knowledge, to his damage.

The judgment of the circuit court is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.