SKIBOWSKI *v.* McCULLOUGH.

1. PRINCIPAL AND AGENT—DUTY OF AGENT.

An agent owes to his principal the utmost good faith and loyalty to his interests.

2. SAME — FRAUD — CANCELLATION OF INSTRUMENTS—EVIDENCE— SUFFICIENCY.

In a suit for the cancellation of a deed on the ground that there was no consideration therefor, and that it was obtained through the fraud of plaintiffs' agent, the plaintiffs must establish their case by a preponderance of the evidence.

3. SAME—EVIDENCE—SUFFICIENCY.
  Evidence *held*, to establish the fact that defendant was acting as agent for the plaintiffs.

4. SAME—FRAUD—CANCELLATION OF INSTRUMENTS.
  Evidence that defendant, acting as plaintiffs' agent for an exchange of property, acquired the property for which plaintiffs were dealing, and, without their knowledge, raised the price thereof about $21,000, and so manipulated the transaction that it resulted in his acquiring plaintiffs' farm without any consideration, *held*, to justify a decree setting aside the deed of the farm to defendant on the ground of fraud.

Appeal from Oakland; Covert (Frank L.), J. Submitted January 26, 1923. (Docket No. 86.) Decided April 27, 1923. Rehearing denied July 19, 1923.

Bill by August Skibowski and another against John B. McCullough to set aside a deed on the ground of fraud, and for an accounting. From a decree for plaintiffs, defendant appeals. Affirmed.

*H. H. Markham, John H. McIntyre,* and *James H. Lynch,* for plaintiffs.

*Bigelow & Rankin* (*F. E. Rankin,* of counsel), for defendant.

MOORE, J. The questions involved in this litigation are so clearly stated by the chancellor who heard the case in open court that we quote from his opinion:

"The bill in this case is filed asking that the deed to certain lands in the township of Oakland, conveyed by plaintiff and wife to the defendant, may be set aside on the ground that there was no consideration for the making of such deed, and that the same was obtained through fraud. And for an accounting between said parties.

"It appears that in December, 1916, plaintiff was the owner of a farm in the township of Oakland, consisting of about 177 acres. That defendant resided in the city of Detroit, and was engaged in the real

estate business. That some time in the fall of 1916, the defendant approached plaintiff and discussed with him the proposition of exchanging his farm for property in Detroit. After some negotiations plaintiffs went to Detroit and inspected some property there, known as the Swartz property. That a written agreement was made between the parties by which August Skibowski, plaintiff, agreed to pay to the defendant the sum of $700 for exchanging his farm for Detroit income property. That for some reason the Swartz deal fell through and soon afterwards defendant suggested to plaintiff that he could trade the farm for a certain apartment building located in the city of Detroit on West Grand Boulevard, known as the Ferry Field apartments. The above facts are not seriously in dispute between the parties.

"It is the contention of plaintiffs that defendant represented to them that the property in question which was not then quite finished, belonged to a wealthy young man in Detroit who was having some difficulty with a woman, and that he had transferred this property to the building contractor.

"That the property would produce an income of 10 or 12% on an investment of $55,000, which defendant claimed was the price of the property. That plaintiff inspected the property and that it was agreed that the property should be finished by completing a garage and some other small matters about the building and that plaintiffs agreed with the defendant that if he would make the deal and look after their interests, they would pay to him the sum of $1,000 as commission for his services. That negotiations were had between the parties and finally later on the deal was made. That in making the deal the plaintiffs gave defendant a check for $1,000 and subsequently assigned to him a mortgage of $21,050 on certain property located in the township of Bloomfield and afterwards signed a deed prepared by defendant conveying their farm to defendant and at the same time received from the defendant and his wife a deed of the property in Detroit. That this was the first intimation they had that the property belonged to the defendant. That they discussed the matter with the defendant and he claimed the matter was all right,

the property had been merely transferred from the owner or the building contractor ·to him. That subsequently plaintiffs gave defendant a check of $1,000 as commission for the sale. That afterwards they learned that defendant after having entered into negotiations with them for the exchange of .their property, had entered into a contract or option with Mr. Parr, owner of the property in Detroit, and had paid to him, indirectly at least, the $1,000 check said to bind the bargain in the first instance, and subsequently cashed the mortgage in question for $20,000 and paid the sum to Parr. That Parr held the property at a cash price of $34,000. That it was mortgaged for $13,000, making his equity therein $21,000; that defendant had transferred to him the above mentioned sum of $1,000 and the mortgage in question amounting in all to $21,000. That after learning the true facts they filed the bill in this case.

"Defendant claimed he was not acting as agent for plaintiffs in the exchange of the plaintiffs' farm for the Ferry Field apartments but had bought the property in good faith and sold it to the plaintiff at an advance of $21,000 or thereabouts. That the sum of $1,000 paid him by August Skibowski was for his services in negotiation of the mortgage and to take care of the adjustment thereon occasioned by the shortage in the acreage and not in any sense a commission. That the deal was a legitimate one, that no fraud was practiced, and that an adequate consideration was paid for the farm.

"The principal question involved in this case is as to whether or not defendant was acting as agent for plaintiffs in trading their property for the property in Detroit. I do not deem it necessary to discuss the evidence in the case in detail, but after carefully considering all the testimony in the case and observing the demeanor of the witnesses upon the witness stand and their manner of giving their testimony, there is no doubt in my mind that throughout the entire transaction, defendant was acting as agent for plaintiffs in making this exchange of property and that he had agreed to accept $1,000 as commission and for his services in looking after the interests of plaintiffs in making the exchange. That after the deal was con-

summated, he was tendered, received and accepted that sum as payment for such commission.    I am also satisfied that defendant did not exercise good faith with plaintiffs in making this transaction.    The facts are, as set forth by the testimony, that after he talked with plaintiffs about making the exchange of his farm for property in Detroit, he went to Mr. Parr, the owner of the property and obtained an option for the purchase of the property in Detroit.    That as far as the proofs show he never paid a dollar of his own money on this property but he merely turned over the check for $1,000 given to him by plaintiffs as his initial payment on the property to Mr. Parr, although he went through the formality of depositing the check in his account and drawing his own check against it. That he did the same thing with the mortgage, merely cashing it and depositing it and drawing a check against it.    That the only possible money he put into it was whatever sum he may have paid, if any, for the option and that amount was so small that the defendant, upon cross-examination, could not remember it. I am fully satisfied from the evidence in this case that he obtained this option from Mr. Parr for the Ferry Field apartments for the sole purpose and with the full intention of raising the price to $55,000 and then deeding it to plaintiffs in exchange for the above mentioned sum of $1,000, the assignment of the mortgage, which two items paid the full purchase price of the apartment $21,000 and in addition, the deed of their property, which he afterwards obtained.    That the transfer of the farm from plaintiffs to defendant was entirely without consideration.    That he concealed from the plaintiffs the true state of affairs and deceived them about the entire transaction with the purpose in mind of acquiring this farm for himself.

"The law is very well settled that it is the duty of an agent in circumstances like this to deal honestly and fairly with his client, to apprise him of all the material facts and circumstances surrounding the deal and to protect his interest.    None of these things were done by defendant.    He was not looking out for the interests of his client but on the contrary was apparently actuated solely by a desire to obtain from the deal a profit of something like $20,000, which he did.

"It seems to me that it is the duty of courts in cases of this character to put their emphatic stamp of disapproval upon such transactions. For the reasons above stated, a decree will be entered in this case setting aside the deed given by plaintiffs to defendant and such further proceedings may be had in the nature of an accounting between the parties as may be deemed necessary."

A decree was entered in accordance with the opinion and the case is brought here by appeal.

Counsel for defendant contend:

(1) That he was not plaintiffs' agent in the Ferry Field apartments exchange; but was clearly a principal.

(2) That Exhibit 3, the agreement of October 14, 1916, for $700 commission was executed during the progress of the negotiations about the Dr. Swartz property; had reference to that property solely; ceased to have effect when the Dr. Swartz negotiations ended; and cannot be the basis of agency in the Ferry Field apartments negotiation, several weeks afterwards, in which the defendant is expressly and plainly in writing designated as a principal.

(3) That there is no basis for holding that the defendant was plaintiffs' agent in the alleged talk about a $1,000 commission or a $1,300 commission; that any such contract as that sought to be established for commission would be void under the statute of frauds, not being in writing; and that a void contract cannot beget or be the basis for a valid contract of agency between the parties.

(4) That the undisputed written evidence, and the circumstantial evidence, incontrovertibly established the defendant's claim that he was a principal.

Each of these propositions is argued at great length. The controlling questions are, Was the defendant the agent of plaintiffs? Did he perpetrate a fraud upon them? That an agent owes to his principal the utmost good faith and loyalty to his interests is so fundamental that we quote but few authorities. 2 Mechem on Agency, § 2411; 4 Elliott on Contracts, §

2907; *McNutt* v. *Dix*, 83 Mich. 328 (10 L. R. A. 660) ; *Hogle* v. *Meyering*, 161 Mich. 472.

We, of course, recognize the rule that plaintiffs must establish their case by a preponderance of the evidence before they are entitled to a decree. *Zimmerman* v. *Feldman*, 217 Mich. 390.

There is a considerable conflict in the evidence, and it would be difficult to harmonize all of it. The plaintiffs are Polanders and Mr. Skibowski claims he cannot read English. There are some facts however that are very clearly established. Early in the relations between the parties defendant insisted upon a paper reading:

"Detroit, Michigan, October 14, 1916.

"Articles of agreement between J. B. McCullough and August Skibowski, in exchange of Detroit income property for farm located in Oakland county, for which August Skibowski agrees to pay J. B. McCullough $700 for services rendered in deal when complete.

"J. B. McCULLOUGH.
"AUGUST SKIBOWSKI."

It is true that when this paper was signed negotiations were under way for an exchange of property with Dr. Swartz, and that these negotiations failed, but this did not result in abandoning the attempt to exchange the farm property for Detroit income property. An exchange was in fact made and but one exchange was made. Mr. Skibowski claims he gave defendant a check for $1,000 to pay him for his services in this transaction. Defendant admits he got the check but claims it was to be applied very differently, and that he was at this time dealing with Mr. Skibowski at arms length.

Another very significant fact is that when the writing of October 14, 1916, was signed, the plaintiffs were the owners of a farm of 177 acres, upon which there was a mortgage of $9,000, and personal property

worth more than $1,600. The plaintiffs paid for the farm $100 an acre, and in their negotiations the parties regarded it as worth $160 an acre. Two months later the defendant was the owner of this farm and personal property and had parted with nothing except the work he had done in bringing about the trade. It taxes one's credulity when one is asked to believe this result could have been accomplished if defendant had acted in good faith toward Mr. Skibowski and had not misrepresented to him the situation.

The decree is affirmed, with costs to the appellees.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.