## REED v. PITKIN.

CORPORATIONS — GENERAL MANAGER AGENT OF STOCKHOLDERS IN
SALE OF ALL OF CORPORATE STOCK—ACCOUNTING.

Where a stockholder, who was also a director, secretary-
treasurer and general manager of a corporation, secured
options from the other stockholders to sell their stock
at not less than par, evidence *held*, to establish an agree-
ment that in said sale he was to act as their agent and
account to them for the proceeds.[1]

Appeal from Muskegon; Hawley (Royal A.), J.,
presiding. Submitted April 24, 1925. (Docket No.
125.) Decided July 16, 1925.

Bill by John O. Reed and others against Clarence
G. Pitkin for an accounting. From a decree for plain-
tiffs, defendant appeals. Affirmed.

*Cross, Foote & Sessions* and *Alex Sutherland*, for
plaintiffs.

*Lovelace & Broek* (*Robert E. Bunker*, of counsel),
for defendant.

BIRD, J. Plaintiffs were the owners of nearly all
of the capital stock of the White River Power & Light
Company, a corporation, doing business in Muskegon
county. Defendant was a stockholder, member board
of directors, secretary, treasurer and general manager
of the company. The company was not in a very
prosperous condition and defendant Pitkin secured a
90-day option from the other stockholders agreeing
to sell to him their shares of stock at the price of
par. Subsequently he exercised his option, purchased

[1]Corporations, 14a C. J. p. 163, § 1943.

the stock and sold the same to the Commonwealth Power Company for $22,400 more than the par value of the stock, and claimed he was entitled to this excess for making the sale. The plaintiffs insist the defendant was acting as their agent in making the sale and, therefore, they are entitled to their respective shares of the excess. These conflicting claims furnished the issue in the trial court. The case was heard by his honor, Judge Hawley, and he filed an opinion, with which we are in accord and, therefore, adopt it as the opinion of this court:

"Most of the facts in this case are conceded. It appears without dispute that for many years prior to 1917 there had existed a corporation known as the Frugale Power Company and a copartnership, composed of John O. Reed, Albert T. Speese, doing business under the name of Reed & Speese; both said corporation and said copartnership were owners of and were engaged in developing flowage rights and privileges and water power on White river in said county and elsewhere, and in the production, distribution and sale of electric light and current.

"In the year 1917 these two companies were merged or consolidated into a new corporation organized for that purpose and known as the White River Power & Light Company, and their property and franchises were duly transferred to the new company. The authorized capital stock of the new company was in the sum of sixty-four thousand ($64,000) dollars, all of which was common stock. However, only fifty-six thousand ($56,000) dollars worth of said stock, consisting of fifty-six hundred (5,600) shares, of the par value of ten ($10) dollars per share, was actually issued and sold. Of this stock so issued, John O. Reed, in the month of July, 1922, owned the amount of 2,025 shares and defendant Pitkin at the same time owned 237½ shares. The balance of said stock so issued was owned by other individual stockholders.

"In the year 1917 the defendant first became interested in the company and for the first time became an investor and stockholder therein.

"On August 16, 1917, he was elected secretary-treasurer of the company and later, and in the year 1919, he was elected general manager thereof.    He continued to act as secretary-treasurer and general manager of the company from that time to and until the sale of the entire capital stock of said company to the Commonwealth Power Company was consummated.    This was done on or about October 15, 1922.

"The company did not pay any dividends from the time of its organization, and what profit it had realized from the business had been expended in improving the defendant's property.    In July, 1922, the book value of the stock actually issued therein was approximately one hundred forty ($140) dollars per share.    *    *    *

"The Stearns Electric Light & Power Company of Ludington, Michigan, in and prior to the year 1922 was engaged in a business similar to that of the White river company and was in need of the power and property rights of the latter company.    Mr. Walsh was at that time the manager of the Stearns company, which was a subsidiary of the Commonwealth Power Company.    As early as the fore part of June, 1922, Mr. Walsh visited the offices of the White River Power Company at Muskegon, Michigan, and there had an interview of considerable length with the defendant; he tried to ascertain from the defendant if the company's property was for sale, but received no particular information in that respect from the defendant. He was informed by the defendant that the book value of the stock of the company was one hundred forty ($140) dollars per share.    There is no testimony tending to show that defendant ever reported that visit and interview to any of the officers or stockholders of the White river company.

"In and perhaps prior to the month of June, 1922, the defendant began to make inquiries of individual stockholders to ascertain if they were desirous of selling their stock and to urge the desirability of making a sale of the company property, and to emphasize and accentuate the perils of the business and the necessity of either selling the property or raising and expending more money.

"It is apparent from the testimony that the defend-

ant took the initiative in urging the desirability of a sale. Finally the defendant called a meeting of the board of directors of the company to be held and which was held on July 11, 1922. All the directors were present, except a possible one. At that meeting he brought up the question of raising more money for the development of the plant and to make further improvements. After considerable discussion it was agreed that all the stockholders should execute and deliver to the defendant options on their several holdings of said stock in order to enable him to find a purchaser and make sale of the same at the best price obtainable and not less than par.

"Later, options were executed to the defendant by each of the several stockholders. These options were substantially in the same form, except the option of Frank H. Speese, and the form is as follows:

" 'OPTION TO PURCHASE.
" 'Whitehall, Michigan, July 15, 1922.

" 'For the sum of one dollar to me in hand paid by C. G. Pitkin, I hereby give to said C. G. Pitkin an option to purchase all of the stock or stocks of the White River Power & Light Co., Inc., of Whitehall, Michigan, now issued to me and standing in my name, or any and all stock which may hereafter be issued to me during the term of this option, at a price of par value, *i. e.* ($10 per share), and without interest. This option to expire ninety days from the date hereof.

" 'It is further agreed and understood, that in case of sale and transfer of said stock or stocks, that at the time of delivery, transfer and payment hereof, I will sign and deliver to said C. G. Pitkin, his successors or assigns, a quitclaim agreement, as to any debt, obligation or claim whatsoever against the Frugale Power Company, Reed & Speese and the White River Power & Light Company.

.............................
Witness: ............................'

"Subsequently the defendant succeeded in selling the entire capital stock of said company to the Commonwealth Power Company for the sum of seventy-eight thousand, four hundred ($78,400) dollars. During all of the period that elapsed from the time that said sale was consummated, he represented and pretended to the stockholders that he was only receiving the

sum of fifty-six thousand ($56,000) dollars for said stock, and that he was receiving no compensation for making such sale, except the usual commission allowed by the purchaser on sales of that character.    Certain of these options were obtained upon the strength of the statements, representations and agreements made at that meeting and again later reiterated by said defendant, and the remainder was obtained from stockholders who were not present at said meeting, but to whom like statements, representations and agreements were made by said defendant.

"The only dispute in the case relates to what was the actual agreement and understanding between the defendant and the several stockholders at the time that he obtained the options from each.  The testimony of each and every stockholder in the case, except that of defendant, tends to show that it was agreed and understood by and between defendant and the said several stockholders that he would obtain a purchaser for said stock and make a sale thereof at the highest price obtainable therefor and not less than par for the benefit of the several stockholders, and that the proceeds of such sale should be divided between the stockholders in proportion to the amount of stock held by each, and that he desired the several options for the purpose of enabling him to consummate such sale, and that they were to be used for that purpose only. On the other hand, the testimony of the defendant is in substance that he was to make sale of such stock at not less than par and that after paying the several stockholders the par value of their stock he was to retain the balance of the purchase price of said stock for his own use and benefit and as his own property. In other words, under the testimony of the several stockholders, except the defendant, the defendant was to act as the agent and trustee of the stockholder in procuring such purchaser and in making such sale, and the options were executed to clothe him with full power as such agent and trustee to make such sale and to receive the purchase price thereof; on the other hand, according to the claim of the defendant, he was not acting as agent and trustee for the plaintiffs but was making such sale in his own behalf and was only

231—Mich.—40.

obligated upon making the same to account for and pay over to each of said stockholders the par value of his individual holdings of stock.

"I am convinced that the agreement and understanding at and before the time that each of the several stockholders executed their options was in substance that the said defendant was to act as the agent and trustee of the several stockholders in making such sale, and that said sale was to be made at the best price obtainable and not less than par, and that the proceeds of such sale were to be divided between the several stockholders in proportion to their several holdings of stock.

"I am also convinced that it was not agreed with or understood by the stockholders that defendant was obtaining a sale of this stock for his own benefit or profit, or that he was to have all that he could obtain on such sale over and above the par value of the stock. The overwhelming weight of the testimony tends to establish the claims of the plaintiffs and to refute those of the defendant. The conduct and statements of the defendant during the negotiations and even subsequent to the sale also tend to contradict his present claim. Concealment, evasion and even falsehood were resorted to by him to deceive the stockholders as to the actual consideration of the sale and the real source and amount of his compensation for consummating the same. Conscious integrity resorts to no such expedients. If he was conscious of the fact that he had no right to appropriate to himself this large sum of money and yet was dishonestly intent on so doing, his conduct would have been in that respect just what it was. On the other hand, if it had been fairly understood that he was to have what he could get above the par value of the stock, there would have been no occasion on his part for resorting to devious methods to conceal either the source or amount of such profit. Only one conclusion can be drawn either from the testimony relating to the arrangements between the defendant and the stockholders or from the acts and conduct of the defendant himself, and that is that in negotiating and consummating the sale in question, defendant was acting as agent and trustee and for the benefit of the stockholders, and that throughout those

transactions he was conscious of the fact that such was the case.

"As agent and trustee it was his legal duty to act towards the other stockholders in entire good faith and he was bound to disclose to them all facts within his knowledge which were or might have been material to them, or which might influence them in their action. *Hogle* v. *Meyering,* 161 Mich. 472, 485; *Michigan Crown Fender Co.* v. *Welch,* 211 Mich. 148, 159, 160 (13 A. L. R. 896); *Wilson* v. *White,* 223 Mich. 497-503.

"It was also the duty of the defendant to fully and faithfully account to the stockholders for the entire proceeds of such sale. In each of these respects he has not conformed to his duty. Accordingly he will be required to account to each plaintiff for the proportionate share of each in the entire proceeds of said sale, to-wit: Seventy-eight thousand, four hundred ($78,400) dollars. On such accounting he will be credited with the amount already paid to each stockholder appearing as plaintiff herein. He will also be credited with the expense of his trip to New York City, one hundred forty-eight ($148) dollars, and his trip to Grand Rapids, fifteen ($15) dollars. Mr. Reed, however, will be required to reimburse the stockholders for the amount of the so-called rebate, seven hundred ($700) dollars. It is my opinion that the Speese judgment which was owned in part by Mr. Reed and in part by Mr. Speese was a proper charge against the company, and that each was entitled to reimbursement thereon; but I am not of the opinion that Mr. Reed was entitled to the so-called rebate nor that the corporation was in anywise obligated to pay him the amount thereof. The securities now held by the defendant and purchased with the proceeds of the sale of the stock of said White River Power & Light Company will be determined to constitute a trust fund for the benefit of the plaintiffs. Plaintiffs are entitled also to interest at the legal rate upon the amounts found to be due them respectively and will recover costs of this suit to be taxed."

In addition to the authorities cited in the opinion bearing on the duties of an official of a corporation toward a stockholder see *Bollstrom* v. *Duplex Power*

*Car Co.*, 208 Mich. 15; *Buckley* v. *Buckley*, 230 Mich. 504; *Mulvane* v. *O'Brien*, 58 Kan. 463 (49 Pac. 607).

The decree of the trial court will be affirmed, with costs to the plaintiffs.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.