## THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58625. Promulgated September 7, 1933.

*Richard L. Lally, Esq.*, and *A. H. Elder, Esq.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

---

OPINION.

Van Fossan: The question for consideration is whether or not the value of the property received by the petitioner in settlement of its equity suit against Joyce and the Victory Steamship Co. constitutes taxable income for the year 1928.

The petitioner contends that whatever of value was received by it in settlement of the equity suit was not taxable income within

the intent of the Sixteenth Amendment. In support of this contention the petitioner cites the definition of income adopted by the Supreme Court in *Eisner* v. *Macomber*, 252 U.S. 189, and argues that what it received in settlement was not a gain derived from capital or labor or both combined, nor a profit gained through the sale or conversion of capital assets. An analysis of the facts in the situation fails to sustain petitioner's contention.

In the equity suit involved in this proceeding the petitioner sought an accounting for profits or for damages, whichever should prove to be the greater. The facts show that the evidence in the hearings before the first special master tended to prove a larger amount of profits than of damages. It is clear too from the facts and from the bill of complaint in the equity suit, a copy of which was made a part of the stipulation of facts, that the suit of the petitioner against Joyce and the Victory Steamship Co. was not a suit to collect damages for a loss of profits. Nowhere in the bill of complaint or in the evidence before this Board is there any indication that the petitioner sought reparation for profits which Joyce's conduct prevented it from earning during the years in which he was manager of the petitioner's marine department.

The petitioner's claim of a right to an accounting for profits is based on the well established doctrine that an agent is precluded by his relationship with his principal, voluntarily assumed, from taking advantage of his principal for his own benefit and from dealing with the latter's property and interests in any other capacity than as an agent who is bound to subordinate his own interest to that of his principal. As a necessary consequence of this doctrine it is well settled that if an agent is disloyal to his principal in his dealings with the latter's property or with third parties on his principal's behalf, consequently deriving profits, he may not keep the profits thus acquired as against his principal, but in respect thereto becomes a trustee for his principal, who at his election may compel an accounting. *Robertson* v. *Chapman*, 152 U.S. 673; *United States* v. *Carter*, 217 U.S. 286; *Sandoval* v. *Randolph*, 222 U.S. 161; *Essex Trust Co.* v. *Enright*, 214 Mass. 507; 102 N.E. 441; *Hogle* v. *Meyering*, 161 Mich. 472; 126 N.W. 1063. As held in *Jackson* v. *Smith*, 254 U.S. 586, on which the petitioner relies, in such case the law makes a fiduciary accountable for all the profits obtained even though no damage to the principal be proved. *Magruder* v. *Drury*, 235 U.S. 106. It follows that when the petitioner's equity action against Joyce and the Victory Steamship Co. was settled before its determination by the court, whatever was received by the petitioner in such settlement was received in lieu of profits and, therefore, represented the profits claimed by the petitioner from defend-

ants on account of the various transactions enumerated in the bill of complaint.

It is, of course, true, as insisted by the petitioner in its brief, that not everything of value received by a taxpayer is income. But the so-called " donation " cases cited by the petitioner, such as *Edwards* v. *Cuba R.R. Co.*, 268 U.S. 628, *Aransas Compress Co.*, 8 B.T.A. 155; *Great Northern Ry. Co.*, 8 B.T.A. 225; *Midland Valley R.R. Co.*, 19 B.T.A. 423, and others of similar import, are not applicable to the facts of the present proceeding. The profits, if any, from the transactions involved in the equity suits in no way constituted reimbursement for capital expenditures or contributions to capital as did the subsidies paid by the Cuban Government in *Edwards* v. *Cuba R.R. Co.*, *supra*, nor were the profits in question here in any sense donations. The allegations of fact from which the petitioner derived the right, if any, to compel Joyce to account for profits were that he was in the employ of the petitioner as a trusted agent; that in conjunction with an outsider as his partner in his scheme and by means of corporate instrumentalities and devices organized and conceived by him, he used his employment by and his position with the petitioner together with the petitioner's facilities and floating and other equipment for making secret profits. The contracts and leases entered into by the petitioner, which were a necessary part of Joyce's alleged unauthorized operations, were executed by the petitioner in the ordinary course of its business operations for its business purposes; and under these contracts the petitioner paid out as expenses and deducted from income for the year in which paid the total sum of $1,608,048.71. It is our opinion, therefore, that in fact Joyce's alleged secret profits were linked inextricably with the petitioner's business operations and with Joyce's employment by the petitioner. These facts are basic to the petitioner's alleged right to the accounting in the equity suit. It follows that the profits sought in the equity suit were at least partially derived from the employment of the petitioner's capital and labor and there is nothing in the facts from which we can determine what part, if any, of the profits sought was not so derived. Therefore, in view of the broad definition of gross income set out in section 213 (a) of the Revenue Act of 1926, as including gains or profits and income from any source whatever, and in view of the definition laid down in *Eisner* v. *Macomber, supra*, we find nothing in the facts relating to the question now under consideration essentially distinguishing this proceeding on principle from the cases in which it has been held that funds recovered by the taxpayer as a result of a suit must be included in taxable income. *Banta Refrigerator Co.*, 15 B.T.A. 1038; *Armstrong Knitting Mills*, 19 B.T.A. 318; *Buffalo Union Furnace Co.*, 23 B.T.A. 439; *Sly Mfg. Co.*, 24 B.T.A. 65; *Sanford* v. *Brooks*, 282 U.S. 359.

The petitioner also contends that the profits realized by the Joyce corporations belonged to the petitioner when earned and that the income taxes due thereon were actually paid by the several corporations; and that in any event any tax due on account thereof was barred by the statute of limitations prior to 1928.

It was stipulated that the Victory Steamship Co. and the Railroad Stevedoring Corporation, whose operations and profits were involved in the petitioner's equity suit, paid income taxes each year on account of such profits and that the total income taxes so paid were greater than the deficiency in question in this proceeding. There is no evidence that the other two corporations whose profits were involved in the equity suit paid any income taxes thereon. However, whether the latter two corporations did or did not pay income taxes on the profits involved in the equity suit is of no importance here, for the reason that we can not hold in this proceeding that the petitioner was entitled to the profits when earned by these corporations. In this connection it is to be observed that by their answers, which were attached to and made a part of the stipulation of facts herein, Joyce and the Victory Steamship Co. deny any liability to the petitioner for the profits involved in the equity suit. That suit did not proceed to a judicial determination and a compromise settlement of a suit at law or in equity before a final judgment or decree is not tantamount to a judicial determination. The facts before us indicate the nature of the equity suit and disclose the basic principles involved therein. But the facts adduced by the defendant in the hearing before the first special master or which might have been introduced by the defendant at a hearing before the second special master are not before us and we, therefore, can not determine here what the United States District Court might have decided with respect to the merits of the equity action had the case proceeded to a final decree.

Moreover, the law applicable to the allegations of the bill of complaint, as set forth in the various cases hereinbefore cited, is to the effect that in such case the principal may compel an accounting for profits and that the defendants are liable therefor when proved. Neither in *Jackson* v. *Smith, supra,* nor in *Porter* v. *Woodruff,* 36 N.J. Eq. 174, on both of which the petitioner relies, is anything held by the court from which a basis may be inferred for holding that profits of an undetermined amount, the right to which is in dispute, are taxable in any other year than that in which their amount is ascertained and that amount is reduced to possession by the taxpayer. The fact that the liability of Joyce for the profits was in dispute distinguishes this case from cases cited by the petitioner. At the time the Joyce corporations received the profits involved in the

equity suit they received them under a claim of right with no restriction as to their disposition. The corporations were, therefore, required to include such profits in their income tax returns for the years in which earned, even though it might thereafter be decreed that Joyce and these corporations were liable for them to the petitioner. *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417; *Board* v. *Commissioner*, 51 Fed. (2d) 73. Such payment of taxes, therefore, was made by these corporations on their own behalf and not on the petitioner's account. Moreover, there is no evidence in this proceeding to support the petitioner's contention that the payments made by the several corporations were paid out of the petitioner's funds. Even though Joyce and the corporations were accountable to the petitioner for profits made as charged in the bill of complaint in the equity suit, nevertheless it may not be assumed without proof that these corporations did no other business than that referred to in the bill of complaint in the equity suit.

Not until 1928 did the petitioner have any knowledge of what, if any, amount of the profits claimed would be received by it. Therefore, it could not report and was not required to report before that time any amount of income represented by the profits claimed, *North American Oil Consolidated* v. *Burnet*, *supra*, and since the amount receivable was ascertained, realized and reduced to possession when the settlement was made in 1928, whatever was so received must be included in the petitioner's income for that year. *Burnet* v. *Logan*, 283 U.S. 404.

The petitioner also contends that " if a tax be assessable on account of receipt of title to the dock property in 1928, it should be assessed, not on the value of the physical property, but merely on the purely nominal value of the paper title received in 1928 for petitioner was the owner of the said structures since they were placed on the land." In support of this last contention the petitioner reiterates the facts hereinbefore referred to, namely, that the Boat Repairing Corporation was organized and controlled by Joyce and James; that the petitioner was unaware of Joyce's interest in that corporation; that Joyce purported to act for the petitioner in negotiating with the Boat Repairing Corporation the leases of the water front property in Jersey City referred to in the findings of fact, the last of which was executed and delivered in 1919; and that the petitioner was still unaware of Joyce's relations with the Boat Repairing Corporation when it consented to the assignment to the Communipaw Dry Dock Co. of the lease executed in 1919. The lease assigned to the Communipaw Dry Dock Co. is that surrendered to the petitioner upon the settlement of the equity suit. On these facts the petitioner argues that the lease was void for the reason

that Joyce, the petitioner's agent, in leasing the property, could not become interested as lessee of the property either personally or through a third person, citing *Cowenhoven* v. *Hannah* (New Jersey Court of Errors and Appeals), 147 Atl. 434, and further argues that because the lease was void the structures and equipment placed on the leased land became the petitioner's property immediately when so placed.

As authority for its contention that the lease was void the petitioner cites *Porter* v. *Woodruff*, *supra*. In that case the court, referring to instances in which an agent acts in a dual capacity without the knowledge of the principal, stated that in such cases the courts " do not pause to speculate concerning the merits of the transaction * * * but they at once pronounce the transaction void * * *." It is our opinion that it may not be held because of the quoted statement of the court in *Porter* v. *Woodruff*, *supra*, that the lease to the Boat Repairing Corporation was a nullity upon its execution. On the facts stated, although the dual capacity in which Joyce acted was unlawful, the lease could not be avoided by the Boat Repairing Corporation. That corporation certainly was bound by it so long as the petitioner elected to hold the corporation to the terms of the lease. The lease could only be avoided by the petitioner, which was the lessor. It was, therefore, voidable. but not an absolute nullity. And it is our opinion that the statement quoted from *Porter* v. *Woodruff*, *supra*, is not inconsistent with this view. Where an agent purports to sell or lease his principal's property and, without the knowledge of his principal, adopts a dual capacity and himself becomes the purchaser or lessee, or where in such case he sells or leases his principal's property to a third person for his own benefit, the principal may have rescission of the sale or lease and secure the return of the property, *Robertson* v. *Chapman*, 152 U.S. 673; *Rich* v. *Black*, 173 Pa. 92; 33 Atl. 880; *Breedlove* v. *Holton*, 143 Wash. 343; 255 Pac. 132, or at his election may accept the situation and compel an accounting for any profits the agent has made. *Robertson* v. *Chapman*, *supra;* *Moore* v. *Petty*, 135 Fed. 668; *Atlantic Transportation & Pine Tar Co.* v. *Rosin & Turpentine Export Co.*, 247 Fed. 618; *Porter* v. *Woodruff*, *supra*. In the present proceeding it appears that, upon discovery of the alleged disloyalty of Joyce, its agent, and of his interest in the Boat Repairing Corporation, the petitioner accepted the situation in respect to the lease of the water front property to the Boat Repairing Corporation and elected to bring suit to compel an accounting for all profits made by Joyce in connection with leases and contracts entered into by the petitioner with the Boat Repairing Corporation and the other Joyce corporations, including the lease of the water front property which,

in 1924, with the consent of the petitioner had been assigned to the Communipaw Dry Dock Co. The latter does not appear to have been associated with Joyce or the corporations in which he was interested.

The equity suit was begun in March 1926. At that time the petitioner had knowledge of Joyce's alleged duplicity. The petitioner did not, however, then disaffirm the lease but, on the contrary, from the date of the petitioner's discovery of Joyce's dual capacity until the date of the settlement of the equity action in June 1928, the Communipaw Dry Dock Co. was allowed to remain in undisturbed possession of the water front property. It is, therefore, a fair assumption that during a period of at least more than two years after the discovery of Joyce's alleged duplicity the petitioner continued to receive and accept from the Communipaw Dry Dock Co. rental for the water front property in Jersey City at the annual rate of $9,600 as provided by the assigned lease. It is our opinion, therefore, that, having elected to sue for an accounting for profits instead of for rescission of the lease and having, with full knowledge of existing conditions, elected to accept benefits under the lease, the petitioner may not now assert that the lease could be avoided. *Truslow* v. *Parkersburg*, 61 W.Va. 628; 57 S.E. 51; *Gordon* v. *Beck*, 196 Cal. 768; 239 Pac. 309. *City of Findlay* v. *Pertz*, 66 Fed. 427.

The petitioner also asserts that in any event the dock structures and equipment placed on the leased water front property were erected and purchased out of money belonging to it. It is our opinion that there is no evidence sustaining this contention. It is not shown that the only business engaged in for profit by the Boat Repairing Corporation was that involved in the equity suit. At the most the petitioner contends only that it was entitled to profits connected with or growing out of Joyce's fiduciary relations with the petitioner and the petitioner's contracts with the Joyce corporations.

Even if we should assume the correctness of the petitioner's contention that any tax assessable should not be assessed on the value of the property transferred to it in settlement of the equity suit, but only on the nominal value of the paper title to that property, still the petitioner could not prevail in this proceeding. The unencumbered title to the property and undisputed possession thereof undoubtedly has some value to the petitioner's business. What that value is, is not proved in this proceeding and, therefore, even on the petitioner's own theory in this respect the presumption in favor of the respondent's determination has not been overcome.

*Decision will be entered for the respondent.*